ARTICLE XV - AMENDMENTS

The provisions of this contract have been developed in the light of uncertainties necessarily attendant upon long-term contracts. Accordingly, at the request of either DOE or Purchaser, the parties will negotiate and, to the extent mutually agreed, amend this contract as the parties may deem to be necessary or proper to reflect their respective interests; provided, however, that any such amendment shall be consistent with the DOE final rule published in the Federal Register on April 18, 1983 entitled, "Standard Contract for Disposal of SNF and/or HLW", as the same may be amended from time to time.

ARTICLE XVI - DISPUTES

A. Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Purchaser. The decision of the Contracting Officer shall be final and conclusive unless within ninety (90) days from the date of receipt of such copy, the Purchaser mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the DOE Board of Contract Appeals (Board). The decision of the Board shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessar to imply bad faith or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Purchaser shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

B. For Purchaser claims of more than $50,000, the Purchaser shall submit with the claim a certification that the claim is made in good faith; the supporting data are accurate and complete to the best of the Purchaser's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the Purchaser believes the Government is liable. The certification shall be executed by the Purchaser if an individual. When the Purchaser is not an individual, the certification shall be executed by a senior company official in charge at the Purchaser's plant or location involved, or by an officer or general partner of the Purchaser having overall responsibility for the conduct of the Purchaser's affairs.

C. For Purchaser claims of $50,000 or less, the Contracting Officer must render a decision within sixty (60) days. For Purchaser claims in excess of $50,000, the Contracting Officer must decide the claim within sixty (60) days or notify the Purchaser of the date when the decision will be made.

D. This "Disputes" clause does not preclude consideration of law questions in connection with decisions provided for in paragraph A above; provided, however, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

ARTICLE XVII - OFFICIALS NOT TO BENEFIT

No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract, or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE XVIII - COVENANT AGAINST CONTINGENT FEES

The Purchaser warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Purchaser for the purpose of securing business. For breach or violation of this warranty, the Government shall have the right to annul this contract without liability or in its discretion to increase the contract price or consideration, or otherwise recover, the full amount of such commission, brokerage, or contingent fee.

ARTICLE XIX - EXAMINATION OF RECORDS

The Purchaser agrees that the Comptroller General of the United States or any of his duly authorized representatives shall have access to and the right to examine any directly pertinent books, documents, papers and records of the Purchaser involving transactions related to this contract until the expiration of three years after final payment under this contract.

ARTICLE XX - PERMITS

The Government and the Purchaser shall procure all necessary permits or licenses (including any special nuclear material licenses) and comply with all applicable laws and regulations of the United States, States and municipalities necessary to execute their respective responsibilities and obligations under this contract.

ARTICLE XXI - RIGHTS IN TECHNICAL DATA

A. Definitions.

1. "Technical data" means recorded information regardless of form or characteristic, of a specific or technical nature. It may, for example, document research, experimental, developmental, or demonstration, or engineering work, or be usable or used to define a design or process, or to procure, produce, support, maintain, or operate material. The data may be graphic or pictorial delineations in media such as drawings or photographs, text in specifications or related performance or design-type documents or computer software (including computer programs, computer software data bases, and computer software documentation). Examples of technical data include research and engineering data, engineering drawings and associated lists, specifications, standards, process sheets, manuals, technical reports, catalog item identification, and related information. Technical data as used herein do not include financial reports, cost analyses, and other information incidental to contract administration.

2. "Proprietary data" means technical data which embody trade secrets developed at private expense, such as design procedures or techniques, chemical composition of materials, or manufacturing methods, processes, or treatments, including minor modifications thereof, provided that such data:

(a) Are not generally known or available from other sources without obligation concerning their confidentiality;

(b) Have not been made available by the owner to others without obligation concerning its confidentiality; and

(c) Are not already available to the Government without obligation concerning their confidentiality.

3. "Contract data" means technical data first produced in the performance of the contract, technical data which are specified to be delivered under the contract, or technical data actually delivered in connection with the contract.

4. "Unlimited rights" means rights to use, duplicate, or disclose technical data, in whole or in part, in any manner and for any purpose whatsoever, and to permit others to do so.

B. Allocation of rights.

1. The Government shall have:

(a) Unlimited rights in contract data except as otherwise provided below with respect to proprietary data properly marked as authorized by this clause;

(b) The right to remove, cancel, correct or ignore any marking not authorized by the terms of this contract on any technical data furnished hereunder, if in response to a written inquiry by DOE concerning the proprietary nature of the markings, the Purchaser fails to respond thereto within 60 days or fails to substantiate the proprietary nature of the markings. In either case, DOE will notify the Purchaser of the action taken;

(c) No rights under this contract in any technical data which are not contract data.

2. Subject to the foregoing provisions of this rights in technical data clause, the Purchaser shall have the right to mark proprietary data it furnishes under the contract with the following legend and no other, the terms of which shall be binding on the Government:

LIMITED RIGHTS LEGEND

This "proprietary data," furnished under "Contract No. DE-CR01-83-NE44373" with the U. S. Department of Energy may be duplicated and used by the Government with the express limitations that the "proprietary data" may not be disclosed outside the Government or be used for purposes of manufacture without prior permission of the Purchaser, except that further disclosure or use may be made solely for the following purposes:

(a) This "proprietary data" may be disclosed for evaluation purposes under the restriction that the "proprietary data" be retained in confidence and not be further disclosed;

(b) This "proprietary data" may be disclosed to contractors participating in the Government's program of which this contract is a part, for information or use in connection with the work performed under their contracts and under the restriction that the "proprietary data" be retained in confidence and not be further disclosed; or

(c) This "proprietary data" may be used by the Government or others on its behalf for emergency work under the restriction that the "proprietary data" be retained in confidence and not be further disclosed. This legend shall be marked on any reproduction of this data in whole or in part.

3. In the event that proprietary data of a third party, with respect to which the Purchaser is subject to restrictions on use or disclosure, is furnished with the Limited Rights Legend above, Purchaser shall secure the agreement of such third party to the rights of the Government as set forth in the Limited Rights Legend. DOE shall upon request furnish the names of those contractors to which proprietary data has been disclosed.

ARTICLE XXII - ENTIRE CONTRACT

A. This contract, which consists of Articles I through XXII and Appendices A through G, annexed hereto and made a part hereof, contains the entire agreement between the parties with respect to the subject matter hereof. Any representation, promise, or condition not incorporated in this contract shall not be binding on either party. No course of dealing or usage of trade or course of performance shall be relevant to explain or supplement any provision contained in this contract.

B. Nothing in this contract is intended to affect in any way the contractual obligation of any other persons with whom the Purchaser may have contracted with respect to assuming some or all disposal costs or to accept title to SNF and/or HLW.

C. Appendices:

A. Nuclear Power Reactor(s) or Other Facilities Covered

B. Discharge Information (Ten Year; Annual)

C. Delivery Commitment Schedule

D. Final Delivery Schedule

E. General Specifications

F. Detailed Description of Purchaser's Fuel

G. Standard Remittance Advice

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: [signature]

(Contracting Officer)

Thomas S Keefe

WITNESSES AS TO EXECUTION ON BEHALF OF PURCHASER

[signature]

(Name) Henri M. Gueron

Consolidated Edison Company of New York, Inc.

4 Irving Place, N.Y., N.Y. 10003

(Address)

[signature]

(Name) Joseph A. Pezzello

Consolidated Edison Company of New York, Inc.

4 Irving Place, N.Y., N.Y. 10003

(Address)

(Purchaser's Company Name)

Consolidated Edison Company of New York, Inc.

By: ______________

William A. Harkins

Title: Assistant Vice President

I, Peter A. Irwin, certify that I am the Assistant Secretary of the corporation named a Purchaser herein; that William A. Harkins who signed this document on behalf of th Purchaser was then Assistant Vice President of said corporation; that said document was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this 17th day of June 1983

(Corporate Seal)

[signature]

(Signature)

# APPENDIX A

## NUCLEAR POWER REACTOR(~~S~~) OR OTHER FACILITIES COVERED

Purchaser Consolidated Edison Company of New York, Inc.

Contract Number/Date DE-CR01-83-NE44373 / 17 June 1983

Reactor/Facility Name Indian Point Unit 1

Location:

Street Broadway and Bleakley Avenues

City Buchanan

County/State Westchester / New York

Zip Code 10511

Capacity (MWE) - Gross 275 (Of this output, approximately 60% is attributable to the reactor and approximately 40% is attributable to the oil-fired superheater. The unit has not operated since 1974 and was retired from service in 1980.)

Reactor Type:

BWR ☐

PWR ☒

Other (Identify) ______

Facility Description Babcock & Wilcox 4-loop reactor. Core B, provided by Westinghouse, utilized slightly enriched uranium dioxide (UO2) fuel contained in stainless steel tubing.*

Date of Commencement of Operation September 16, 1962.
(actual ~~or estimated~~)

NRC License #: DPR-5

By Purchaser:

| | | |
|---|---|---|
| [signature] | Assistant Vice President | 17 June 1983 |
| Signature | Title | Date |
| William A. Harkins | | |

* Core A and Regions 1, 2 and 3 of Core B have already been reprocessed by Nuclear Fuel Services, Inc. and are not covered by this contract.

APPENDIX A

NUCLEAR POWER REACTOR(~~S~~) OR OTHER FACILITIES COVERED

Purchaser Consolidated Edison Company of New York, Inc.

Contract Number/Date DE-CR01-83-NE44373 / 17 June 1983

Reactor/Facility Name Indian Point Unit 2

Location:

Street Broadway and Bleakley Avenues

City Buchanan

County/State Westchester / New York

Zip Code 10511

Capacity (MWE) - Gross 906

Reactor Type:

BWR ☐

PWR ☒

Other (Identify) ______

Facility Description Westinghouse Electric Corporation 4-loop reactor utilizing slightly enriched uranium dioxide (UO2) fuel contained in zircaloy tubing.

Date of Commencement of Operation August 15, 1973
(actual ~~or estimated~~)

NRC License #: DPR-26

By Purchaser:

| | | |
|---|---|---|
| [signature] | Assistant Vice President | 17 June 1983 |
| Signature<br>William A. Harkins | Title | Date |

## APPENDIX B

## TEN YEAR DISCHARGE FORECAST

To be used for DOE planning purposes only and does not represent a firm commitment by Purchaser.

Purchaser ______________________________

Contract Number/Date ______________ / ______________

Reactor/Facility Name ______________________________

Location:

Street ______________________________

City ______________________________

County/State ______________ / ______________

Zip Code ______________

Type: BWR ☐

PWR ☐

Other (Identify) ______________________________

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 10 yr Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Discharge date - mo/yr (or refueling shut down date) | | | | | | | | | | | |
| Metric tons - initial | | | | | | | | | | | |
| - discharged | | | | | | | | | | | |
| Number of assemblies discharged (per cycle) | | | | | | | | | | | |

By Purchaser:

______________ ______________ ______________
Signature Title Date

APPENDIX B
(Enclosure 1)

ACTUAL DISCHARGES

Purchaser ______________________________

Contract Number/Date ______________ / ______________

Reactor/Facility Name ______________________________

Location:

Street ______________________________

City ______________________________

County/State ______________ / ______________

Zip Code ________

Type:

BWR ☐

PWR ☐

Other (Identify) ______________________________

Refueling Shutdown Date ______________

Metric Tons Uranium (Initial/Discharged); ________ / ________
Initial Discharged

Number of Assemblies Discharged: ______________________________

Any false, fictitious or fraudulent statement may be punishable by fine or imprisonment (U.S. Code, Title 18, Section 1001).

By Purchaser:

| Signature | Title | Date |
| --- | --- | --- |

# APPENDIX C

## DELIVERY COMMITMENT SCHEDULE

This delivery commitment schedule shall be submitted by Purchaser to DOE as specified in Article V.B. of this contract.

Purchaser ______________________________

Contract Number/Date ______________ / ______________

Reactor/Facility Name ______________________________

Location:

Street ______________________________

City ______________________________

County/State ______________ / ______________

Zip Code ________

Type Cask Required: ______________________________

Shipping Lot Number (Assigned by DOE) ____________

Proposed Delivery Date ____________

DOE Assigned Delivery Commitment Date ____________

Proposed Shipping Mode: Truck ☐ Rail ☐ Barge ☐

Range of Discharge Date(s) (Earliest to Latest) ____ / ____ / ____ To ____ / ____ / ____
(Mo / Day / Yr To Mo / Day / Yr)

Metric Tons Uranium: (Initial) ____________
(Discharged) ____________

Number of Assemblies:

BWR ________

PWR ________

Other ______

# APPENDIX C

Unless otherwise agreed to in writing by DOE, the Purchaser shall furnish herewith to DOE suitable proof of ownership of the SNF and/or HLW to be delivered hereunder. The Purchaser shall notify DOE in writing at the earliest practicable date of any change in said ownership.

Any false, fictitious or fraudulent statement may be punishable by fine or imprisonment (U.S. Code, Title 18, Section 1001).

By Purchaser:

| | | |
|---|---|---|
| Signature | Title | Date |

Approved by DOE:

| | | |
|---|---|---|
| Technical Representative | Title | Date |
| Contracting Officer | | Date |

APPENDIX D

FINAL DELIVERY SCHEDULE

(To be submitted to DOE by Purchaser for each designated Purchaser Delivery site not later than twelve (12) months prior to estimated date of first delivery.)

Purchaser: ______________________________

Contract Number/Date ______________ / ______________

Reactor/Facility Name ______________________________

Location:

Street ______________________________

City ______________________________

County/State ______________ / ______________

Zip Code ______

Type(s) cask(s) required: ______________ # Assembilies per cask ___

Shipping Lot Number ______________ Shipping Mode: Truck ___
(Assigned by DOE)

Rail ___

Barge ___

Metric Tons Urainum: (Initial) ________
(Discharged) ________

Range of Discharge Date(s) (Earliest to Latest) ____ / ____ / ____ To ____ / ____ / ____
Mo Day Yr Mo Day Yr
(From approved commitment schedule)

Number of Assemblies:

BWR ____________

PWR ____________

Other ____________

Purchaser's Delivery Estimate First ____ / ____ / ____ Last ____ / ____ / ____
Mo Day Yr Mo Day Mo

## APPENDIX D

Unless otherwise agreed to in writing by DOE, the Purchaser shall furnish herewith to DOE suitable proof of ownership of the SNF and/or HLW to be delivered hereunder. The Purchaser shall notify DOE in writing at the earliest practicable date of any change in said ownership.

To confirm acceptability of delivery date(s):

Purchaser Contact ____________________ Title ______________________________
Phone ____________________

DOE Contact ____________________ Title __________
Phone ____________________

Any false, fictitious or fraudulent statement may be punishable by fine or imprisonment (U.S. Code, Title 18, Section 1001).

By Purchaser:

| Signature | Title | Date |
|---|---|---|

Approved by DOE:

| Technical Representative | Title | Date |
|---|---|---|
| Contracting Officer | | Date |

# APPENDIX E

## GENERAL SPECIFICATIONS

A. Fuel Category Identification.

1. Categories--Purchaser shall use reasonable efforts, utilizing technology equivalent to and consistent with the commercial practice, to properly classify Spent Nuclear Fuel (SNF) prior to delivery to DOE, as follows:

   a. "Standard Fuel" means SNF that meets all the General Specifications therefor set forth in paragraph B below.

   b. "Nonstandard Fuel" means SNF that does not meet one or more of the General Specifications set forth in subparagraphs 1 through 5 of paragraph B below, and which is classified as Nonstandard Fuel Classes NS-1 through NS-5, pursuant to paragraph B below.

   c. "Failed Fuel" means SNF that meets the specifications set forth in subparagraphs 1 through 3 of paragraph B below, and which is classified as Failed Fuel Class F-1 through F-3 pursuant to subparagraph 6 of paragraph B below.

   d. Fuel may have "Failed Fuel" and/or several "Nonstandard Fuel" classifications

B. Fuel Description and Subclassification--General Specifications.

1. Maximum Nominal Physical Dimensions.

| | Boiling Water Reactor (BWR) | Pressurized Water Reactor (PWR) |
|---|---|---|
| Overall Length | 14 feet, 11 inches | 14 feet, 10 inches |
| Active Fuel Length | 12 feet, 6 inches | 12 feet, 0 inches |
| Cross Section* | 6 inches x 6 inches | 9 inches x 9 inches |

*The cross section of the fuel assembly shall not include the channel.

NOTE: Fuel that does not meet these specifications shall be classified as Nonstandard Fuel--Class NS-1.

APPENDIX E

2. Nonfuel Components. Nonfuel components including, but not limited to, control spiders, burnable poison rod assemblies, control rod elements, thimble plugs, fission chambers, and primary and secondary neutron sources, that are contained within the fuel assembly, or BWR channels that are an integral part of the fuel assembly, which do not require special handling, may be included as part of the spent nuclear fuel delivered for disposal pursuant to this contract.

NOTE: Fuel that does not meet these specifications shall be classified as Nonstandard Fuel--Class NS-2.

3. Cooling. The minimum cooling time for fuel is five (5) years.

NOTE: Fuel that does not meet this specification shall be classified as Nonstandard Fuel--Class NS-3.

4. Non-LWR Fuel. Fuel from other than LWR power facilities shall be classified as Nonstandard Fuel--Class NS-4. Such fuel may be unique and require special handling, storage, and disposal facilities.

5. Consolidated Fuel Rods. Fuel which has been disassembled and stored with the fuel rods in a consolidated manner shall be classified as Nonstandard Fuel Class NS-5.

6. Failed Fuel

a. Visual Inspection.

Assemblies shall be visually inspected for evidence of structural deformity or damage to cladding or spacers which may require special handling. Assemblies which [i] are structurally deformed or have damaged cladding to the extent that special handling may be required or [ii] for any reason cannot be handled with normal fuel handling equipment shall be classified as Failed Fuel--Class F-1.

b. Previously Encapsulated Assemblies.

Assemblies encapsulated by Purchaser prior to classification hereunder shall be classified as Failed Fuel--Class F-3. Purchaser shall advise DOE of the reason for the prior encapsulation of assemblies in sufficient detail so that DOE may plan for appropriate subsequent handling.

c. Regulatory Requirements.

Spent fuel assemblies shall be packaged and placed in casks so that all applicable regulatory requirements are met.

APPENDIX E

C. Summary of Fuel Classifications.

1. Standard Fuel:

a. Class S-1: PWR
b. Class S-2: BWR

2. Nonstandard Fuel:

a. Class NS-1: Physical Dimensions
b. Class NS-2: Non Fuel Components
c. Class NS-3: Short Cooled
d. Class NS-4: Non-LWR
e. Class NS-5: Consolidated Fuel Rods.

3. Failed Fuel:

a. Class F-1: Visual Failure or Damage
b. Class F-2: Radioactive "Leakage"
c. Class F-3: Encapsulated

D. High-Level Radioactive Waste.

The DOE shall accept high-level radioactive waste. Detailed acceptance criteria and general specifications for such waste will be issued by the DOE no later than the date on which DOE submits its license application to the Nuclear Regulatory Commission for the first disposal facility.

Jul. 29 2004 10:14 OCRWM DOE 2025869608 p.2

7-29-04;10:54AM; ;202 479 2137 # 4/ 4

SENT BY: DOE/OCRWM; 2025869608; NOV-26-01 12:32PM; PAGE 2/2

Nov-26-2001 10:40am From-ESI-NUCLEAR FUELS 6013585752 T-258 P.002/002 F-817

NET 1-7

conEdison

Consolidated Edison Company
of New York, Inc.
4 Irving Place
New York NY 10003
www.conEd.com

__VIA REGISTERED MAIL__

September 6, 2001

Mr. Herbert D. Watkins
Contracting Officer
U.S. Department of Energy
Office of Headquarters Procurement Services
MA-542
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Re: __Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste, dated June 17, 1983 (Standard Contract No. DE-CR01-83-NE44373)__

Dear Mr. Watkins:

Pursuant to Article XIV of the above-referenced Standard Contract No. DE-CR01-83-NE443730 (the "Contract"), please be advised that Consolidated Edison Company of New York, Inc. ("Con Edison"), as Purchaser under the Contract, has transferred title to the spent nuclear fuel and high-level radioactive waste within the scope of the Contract to Entergy Nuclear Indian Point 2, LLC ("Entergy"), effective September 6, 2001. Please be further advised that pursuant to the terms of a Generating Plant And Gas Turbine Asset Purchase and Sale Agreement between Con Edison and Entergy dated as of November 9, 2000, Con Edison has, effective September 6, 2001, assigned Con Edison's rights and obligations under the Contract to Entergy, with the exception of all claims and causes of action in respect of damages to property or economic loss related to or pertaining to the Department of Energy's breaches or defaults under the Contract accrued as of September 6, 2001, whether relating to periods prior to or following September 6, 2001.

Notice is hereby given pursuant to Article XII of the Contract that all future correspondence concerning the Contract should be directed to:

Entergy Nuclear Services, Inc.
P. O. Box 31995
Jackson, MS 39286-1995
Attn: Frank B. Rives
Director, Nuclear Fuels

If you have any questions, please contact the undersigned.

Very truly yours,

[signature]

cc: Douglas E. Levanway, Esq.
Brent L. Brandenburg, Esq.
David Zabransky, DOE OCRWM