No. 04-0033C
(Judge Bruggink)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**
**Plaintiff,**

**v.**

**THE UNITED STATES,**
**Defendant.**

---

No. 03-2622 C
(Judge Lettow)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENTERGY NUCLEAR INDIAN POINT 2, LLC,**
**Plaintiff,**

**v.**

**THE UNITED STATES,**
**Defendant.**

---

# CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO CONSOLIDATE

---

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
Tel: (202) 785-9700
Fax: (202) 887-0689

Attorney for Plaintiff

August 23, 2004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 4

I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED .......... 4

II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN CON EDISON AND ENIP .......... 8

III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED .......... 13

IV. CON EDISON WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION .......... 14

V. THE GOVERNMENT HAS SUCCESSFULLY CONCLUDED OTHER SNF LITIGATION WITHOUT CONSOLIDATION .......... 15

CONCLUSION .......... 17

**TABLE OF AUTHORITIES**

Page

Cases:

*Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001) .................... 7
*Applegate v. United States*, 35 Fed. Cl. 406 (1996) .................... 13
*Boston Edison v. United States*, No. 99-447C (Fed. Cl. filed July 12, 1999) .................... 9
*Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y. 1987) .................... 6
*Commonwealth Edison v. United States*, 56 Fed Cl. 652 (2003) .................... 8
*Cont'l Bank & Trust Co. v. Ol. s. E. D. Platzer*, 304 F. Supp. 228 (S.D. Tex. 1969) .................... 6
*Creppel v. United States*, 33 Fed. Cl. 590 (1995) .................... 13
*Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C (Fed. Cl. filed Nov. 5, 2003) .................... 1
*Exelon Generation Co. LLC v. United States*, No. 04-102C (Fed. Cl. filed Jan. 28, 2004) .................... 15, 16
*Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D. Mich. 1985) .................... 5
*Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) .................... 14
*Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 21, 2004) .................... 4
*Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993) .................... 6
*Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) .................... 8
*Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976) .................... 5
*N. States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) .................... 8
*Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436 (E.D. Wis. 1972) ...... 5-6
*Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887 (Ct. Cl. 1955) .................... 12
*Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001) .................... 8
*S. Nuclear Elec. Co. v. United States*, No. 98-614C (Fed Cl. filed Apr. 7, 2004) .................... 8
*Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) .................... 5
*St. Bernard General Hospital, Inc. v. Hospital Service Ass'n of New Orleans, Inc.*, 712 F.2d 978 (5th Cir. 1983) .................... 7
*TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) .................... 14
*United States v. Dow*, 357 U.S. 17 (1958) .................... 13
*Yankee Atomic Elec. Co., et al. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004) .................... 2, 13

Page

*Yankee Atomic Elec. Co., et al. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) ........ 2

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 26, 2003) ........ 8

Statutes:

31 U.S.C. § 3727 ........ 13

42 U.S.C. § 10101 *et seq* ........ 2

Miscellaneous:

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383 ........ 6

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C** |
| | ) | **(Judge Bruggink)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant,** | ) | |
| **ENTERGY NUCLEAR INDIAN POINT 2, LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-2622 C** |
| | ) | **(Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO CONSOLIDATE**

**INTRODUCTION**

Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison"), opposes the Government's motion to consolidate this case with *Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C (Fed. Cl. filed Nov. 5, 2003) ("ENIP").[1] Both this case and ENIP are among the more than sixty (60) cases currently pending in this

[1]This Opposition is being concurrently filed with Judge Lettow in the *Entergy Nuclear Indian Point 2, LLC v. United States* No. 03-2622C (Fed. Cl. filed Nov. 5, 2003) proceeding pursuant to the discussion with the Court during the August 6, 2004 hearing in case number 04-0033C.

court arising from the Department of Energy's complete failure to comply with the requirements of the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq.* ("NWPA" or "the Act"), and related contracts, to commence disposal of spent nuclear fuel ("SNF") by January 1998 from more than one hundred nuclear electric power plants.

The principal arguments advanced by the Government – namely that there is a potential for inconsistent outcomes since the cases present common issues of rate and schedule of spent fuel acceptance and greater than Class C waste – have twice been rejected as grounds for stays, consolidation, or coordinated treatment of SNF cases.[2] In the particular instance of these two cases, the legal issues involved in each case could not be more different, and the factual issues could not be more distinct. Far from conserving judicial resources or promoting the efficient administration of justice, consolidation of the cases would have exactly the opposite effect. Consolidation would force Con Edison to litigate issues that have nothing to do with the merits of its case, issues that are much more complex, issues that are dependent on events that have not yet occurred and may not occur for years to come (if ever), and issues that will take much longer to litigate at much greater expense to Con Edison. The fair and efficient administration of justice clearly supports the Court allowing the Con Edison and ENIP matters to proceed on independent and unconsolidated tracks. Accordingly, Con Edison respectfully requests that the Court deny the Government's Motion to Consolidate.

---

[2] *Yankee Atomic Elec. Co., et al. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) and *Yankee Atomic Elec. Co., et al. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004).

## BACKGROUND

Con Edison was the sole owner and operator of the Indian Point Unit 1 and 2 nuclear electric generating facilities ("Indian Point") from the 1960s through September 6, 2001. The NWPA obligated the Department of Energy "DOE" to enter into a Standard Contract with each of the nation's commercial nuclear power plant owners, including Con Edison, requiring DOE to commence the acceptance and permanent disposal of the SNF from these nuclear facilities by January 31, 1998, in return for payments of substantial fees by the owners into a Nuclear Waste Fund created by the NWPA.

Despite collecting in excess of $19 *billion* directly and through earned interest from the nation's nuclear utilities, and more than $115 million from Con Edison alone, DOE did not commence SNF disposal by the statutory deadline mandated by the NWPA, and to this day is unable to say when if ever such disposal will actually begin. On September 6, 2001, more than three years after DOE repudiated its SNF disposal obligations, Con Edison sold Indian Point to ENIP. As part of the sales transaction for Indian Point, Con Edison assigned its DOE Standard Contract (which was then in breach) to ENIP, specifically reserving all claims against DOE related to breaches of the Standard Contract up to the closing date of the sale. The claims reservation language and the assignment of the Standard Contract on the terms specified were approved by the Government (per the Nuclear Regulatory Commission) on August 27, 2001.

As a direct and proximate result of DOE's failure to perform its statutory and contractual obligations, Con Edison suffered significant damages. These damages fall into three general categories, namely (a) significant diminution in the value of Con Edison's Standard Contract (in which it had already invested more than $115 million), as well as the value of the Indian Point nuclear assets with which the contract was

inextricably linked, causing Con Edison to realize significantly less value in the sale of Indian Point than would have been the case had DOE met its obligations under the NWPA and the Standard Contract, (b) unlawful fee collection practices by DOE occurring prior to the sale of Indian Point, and (c) increased costs and expenditures incurred by Con Edison to store and maintain SNF up to the closing date of Con Edison's sale of Indian Point.

Con Edison has pled damages that were caused both by breaches of its Standard Contract as well as just compensation arising from the Government's unconstitutional taking of its property occurring up to the date of the sale of the plant. These can be readily measured by the difference between the value Con Edison received when it assigned its Standard Contract and other nuclear assets and what it would have received had DOE not breached the Standard Contract and engaged in violations of the NWPA. ENIP, on the other hand, seeks to recover for future costs incurred after the sale of the facility because of the Government's ongoing breach of the contract. ENIP evidently seeks to measure its damages based on future events related to the starting date when DOE actually begins to accept SNF for disposal, and the pace with which disposal occurs. These issues are discussed more fully in *Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 21, 2004) (Hodges, J.), the first post-trial opinion in an SNF case to be issued by this Court.

## ARGUMENT

### I. WHEN DISTINCT ISSUES BETWEEN TWO CASES PREDOMINATE, CONSOLIDATION SHOULD BE DENIED

Even in SNF cases which present common issues of future DOE performance, requests by the Government for consolidation, stays, and coordinated treatment have been denied due to the individual circumstances of each particular plaintiff --

specifically what the plaintiff's ever-changing plans are for dealing with the problems wrought by DOE's failure to comply with the Act or its Standard Contracts. In the particular instance of the Con Edison and ENIP claims, however, and as discussed in more detail in Section II, *infra*, the dissimilarities between these particular two claims are more distinct, numerous, and significant than any other SNF cases. This is because Con Edison's damages are fixed and can be determined as of the dates of the Government's acts complained of, and the date in 2001 when its Standard Contract losses and damages were liquidated. ENIP's claims, on the other hand, are more in line with those in other (and unconsolidated) SNF cases.

When applying Rule 42(a) to particular cases, the threshold inquiry is as to whether common questions of law or fact exist that warrant consolidation of the actions. *See Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460 (E.D. Mich. 1985) (where the court denied defendant's motion to consolidate because cases involved predominantly individual issues). Although the Government here asserts that there are such common questions, the only issues the Government is able to point to relate to its standard list of forward-looking issues such as rate and timing of SNF acceptance. But those issues are manifestly not part of Con Edison's case, as discussed in greater detail in Section II *infra*.

When cases involve some common issues, but individual legal and/or factual issues predominate, consolidation should also be denied. *See Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) (court denied motions for consolidation because parties sought different types of damages); *see also Molever v. Levenson*, 539 F.2d 996 (4th Cir. 1976) (court reversed the lower court's decision to consolidate because the claims stated four separate causes of action). Consolidation is not justified nor required simply because the actions include some common questions of fact or law. *See Prudential Ins. Co. of Am.*

*v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) (denying defendant's motion for consolidation, the court writes "the fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'"); *see also Cont'l Bank & Trust Co. v. Ol. s. E. D. Platzer*, 304 F. Supp. 228, 229 (S.D. Tex. 1969) (holding the mere presence of a common question of law or fact does not require consolidation); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383, at 439-40 (same).

The Government has failed to put forward any rational basis for consolidation of the present cases. Indeed, the factual and legal distinctions between Con Edison's and ENIP's cases vastly outweigh any similarities. The Government provides numerous citations for the common sense proposition that cases which do in fact present substantially identical issues may be consolidated. These citations, however, do not shed light on why cases with as few substantive legal similarities as Con Edison and ENIP should be consolidated. For instance, while the courts in *Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993), and *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 669 F. Supp. 577 (S.D.N.Y. 1987), ultimately consolidated the cases involved, both of those cases presented such scenarios as claimants asserting entitlement to the same physical property, or where the factual issues giving rise to both disputes were found to be "identical." Motion at 5. Such settings are not germane to the claims of Con Edison and ENIP, where the Government's failure to commence SNF disposal is not disputed, where the elements of damage are carefully allocated by contract and separated by time, where the Government's standard rate of acceptance-type defenses pertain to one case [ENIP] but not the other, and where there are no competing claims for the same or

finite dollars in the Judgment Fund. For all of these reasons Con Edison's claims are both legally and factually distinct from those of ENIP.

The Government also cites *Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001), for the proposition that consolidation is appropriate when two plaintiffs sue the same defendant. Motion at 5. The Court in *Allfirst*, however, consolidated the cases only after finding that the suits were "mirror image[s]" of one another. 178 F. Supp. 2d at 520. Once again, even if this Court were to find some factual similarities between these two cases, they are not sufficiently similar to warrant consolidation. Indeed, taken to its logical conclusion, the Government's arguments would require the consolidation of *every* SNF case being heard by the Court, a request that has been consistently and repeatedly rejected as being inconsistent with the fair and efficient administration of justice.

Finally, the Government cites *St. Bernard General Hospital, Inc. v. Hospital Service Ass'n of New Orleans, Inc.*, 712 F.2d 978 (5th Cir. 1983), for the principle that the Court may consolidate cases in face of opposition from one of the parties. Motion at 6. Yet for some unknown reason the Government's Motion fails to note that *St. Bernard* ultimately *affirmed* the lower court's *denial* of the plaintiff's motion to consolidate, primarily because the cases were at different stages of preparedness for trial. Similarly, Con Edison asks this Court to deny consolidation for the independent reason that the large and voluminous issues to be determined in ENIP would unavoidably forestall the development of Con Edison's case were the cases consolidated. As discussed in Section IV *infra*, consolidating Con Edison's and ENIP's cases would cause Con Edison to face an undeterminable amount of delay, incur the expense of litigating issues that are not

related to Con Edison's damages theories, and otherwise overly complicate Con Edison's straight-forward claims.

## II. THERE IS NO DISCERNABLE SIMILARITY BETWEEN THE ISSUES IN CON EDISON AND ENIP

The Government argues that consolidation is necessitated by similar facts between Con Edison and ENIP. The Government maintains that given the similar issues, there is potential for inconsistent judgments if the cases are not consolidated. While the Standard Contracts in all the SNF cases are virtually identical, this fact alone does not support consolidation. Indeed, if it did, the Government would have been successful in its multiple failed attempts to consolidate all SNF cases. Furthermore, once the issue of liability is determined – and Con Edison contends that liability has indeed been determined by both this Court[3] and the Federal Circuit[4] – these cases will deal almost exclusively with damages. As discussed in greater detail below, the damages of ENIP and Con Edison are so distinct from one another that any effort to consolidate the two cases would merely confuse these critical distinctions.

The similarity of the Standard Contracts at issue in the SNF cases aside, the Government's assertion that Con Edison and ENIP are seeking damages from the same partial breach of the same contract is plainly incorrect. Motion at 6. The breach is a continuing breach, and Con Edison seeks recovery of damages for breaches occurring prior to the assignment of its Standard Contract rights and other nuclear assets, whereas

---

[3] *Commonwealth Edison v. United States*, 56 Fed Cl. 652 (2003); *Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 26, 2003) (Merow, S.J.) (order finding Government liable for breach); *S. Nuclear Elec. Co. v. United States*, No. 98-614C (Fed Cl. filed Apr. 7, 2004) (Merow, S.J.) (same).

[4] *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000); *N. States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000); *Roedler v. Dep't of Energy*, 255 F.3d 1347 (Fed. Cir. 2001).

ENIP seeks damages for breaches occurring subsequently. In fact, the Court (per Judge Lettow in *Boston Edison v. United States*, No. 99-447C (Fed. Cl. filed July 12, 1999)), has already recognized that separate parties may assert distinct damages claims based on the Government's continuing breach of the same Standard Contract: "[The selling and purchasing utility] could both rely on the same contract as a basis for damage claims, just for different periods. I think that's what they're trying to do." *See* Hearing Transcript, dated Mar. 16, 2004, at 27, attached hereto as Exhibit 1.

Any common issues between these distinct claims are incidental to the underlying issues that are fundamental to the Court's ultimate damages determinations. ENIP seeks recovery for future SNF management costs that will be incurred at the Indian Point facility in light of the indeterminate time and circumstances of DOE's future performance. There are no assertions as to these matters in Con Edison's complaint. Instead, Con Edison seeks damages for the injury to its Standard Contract rights and its nuclear enterprise, including lost profits and diminished value, caused by the DOE breach and its fee collection practices. Since these injuries occurred upon the sale of those assets in 2001, the actual future DOE performance at the core of ENIP's case is simply not relevant to Con Edison.

As a post-breach seller of a nuclear facility, Con Edison's damages are readily ascertainable as of the closing date of the sales transaction. Con Edison's breach damages include a claim for diminished value that is generally the difference between the value Con Edison received when it assigned its Standard Contract – in which it had invested more than $115 million – and its other nuclear assets, as distinguished from what it would have received had the DOE not ignored its NWPA obligations and breached the Standard Contract. By contrast, ENIP, as the current owner of Indian

Point, is necessarily dealing with ongoing issues linked to DOE's actual future performance, its future mitigation costs, and associated damages resulting from DOE's breach.

ENIP, like the great majority of other SNF litigants, is seeking to measure its damages at this time based on future events related to the starting date when DOE begins to accept SNF for disposal, and the pace with which disposal occurs. The Government's arguments in ENIP concern the applicable rate of acceptance for the fuel as a means of quantifying ENIP's damages, which will principally occur well in the future.

As Con Edison advised the court in its Pre-Discovery Conference Report dated April 23, 2004, it is unaware of any relevance that the rate of acceptance issue, as raised by the Government in ENIP, will have on Con Edison's theories of liability or damages. As the rate of acceptance is not relevant to Con Edison's claim of lost contract rights and diminished value, there is no basis to conclude that the Con Edison and ENIP cases are substantially similar, or that their outcomes would result in inconsistent rulings by the Court. In fact, there is nothing intrinsically conflicting or duplicative about allocation of pre-sale and post-sale damages between a buyer and seller in the context of a continuing failure to perform, since the two claims are temporally distinct.

Because Con Edison is an assignor of Standard Contract rights, as opposed to an existing contract holder, its case will involve vastly different proofs than ENIP. Since Con Edison divested its nuclear assets, it is not concerned with (and does not seek damages based upon) DOE's actual future performance and the attendant rate of acceptance issues. Thus, the resources being allocated by the Government to the rate of acceptance issues in *ENIP* (and most of the other SNF cases) will not need to be diverted

to, or duplicated in *Con Edison* because those issues are not relevant to Con Edison's liability or damages theories. Moreover, ENIP has not raised a claim relating to Nuclear Waste Fund fee overcharges, which is a major element of Con Edison's complaint. *See, e.g.*, Complaint ¶ 76. Since such allegations are absent from ENIP's case, Con Edison's damages theories cannot be viewed as common, let alone similar enough to warrant consolidation.

The Government further argues that the cases should be consolidated because the Court will have to determine the scope and validity of Con Edison's assignment of the Standard Contract to ENIP. The Government is trying to create controversy where none exists. The Asset Purchase and Sale Agreement ("APSA") clearly and completely identifies the assignment of claims to each party. The APSA was presented to the Government, specifically the Nuclear Regulatory Commission, on December 12, 2000, as the key component of a request to transfer Standard Contract rights and responsibilities from Con Edison to ENIP. Relying on the APSA, that governmental approval was granted on August 27, 2001. Subsequently, and in reliance on the Government's approval of the APSA's terms and conditions, on September 6, 2001 Con Edison notified the Government, specifically the Department of Energy, of the actual assignment of the Standard Contract and the retained claims features of the assignment.

The Government, however, remained silent. On no occasion did the Government contest or inquire further about the terms of the assignment. Yet, now that Con Edison has avowed itself of asserting those very claims that it retained, the Government is attempting to object. After twice acknowledging the Standard Contract assignment terms, the Government should not be heard years later to complain that it is unable to discern which claims were retained and which were assigned. *See Laforge &*

*Budd Constr. Co. v. United States*, 48 Fed. Cl. 566 (2001) (party waives or is prohibited by laches from asserting later-raised arguments where delay is unreasonable and unexcused).

The Government also maintains that there will be an overlap between the two cases concerning the issue of Greater than Class C Waste ("GTCC"), including the duplicative testimony of common witnesses. This, like the issue of rate of acceptance, is irrelevant because Con Edison does not claim damages for GTCC waste. To Con Edison's knowledge, there will be no common witnesses proffered by Con Edison and ENIP. There has been no mention of GTCC waste in Con Edison's pleadings to date, and there will be none in the future. Indeed, the Government's assertion that its witnesses and legal defenses will be the same on such matters as GTCC waste proves too much, since its logic would supply a rationale for consolidating all 64 cases, which as mentioned above has been rejected twice before.

Moreover, Con Edison's takings claim provides an additional, unique reason to reject consolidation. In accordance with the APSA, Con Edison retained all claims related to the Government's failure to commence disposal (including claims regarding the overcharging of fees) up to the time of assignment, which necessarily meant its right to bring a takings claim. To establish a prohibited taking, a claimant must demonstrate that it was the owner of property and that some portion of the property was taken for a public purpose. *Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887, 890 (Ct. Cl. 1955). Further, Con Edison, as the owner of the property at the time of the taking, retained the right to bring a claim for an uncompensated taking in violation of the Fifth Amendment to the Constitution. *See id.* (to establish a prohibited taking, a claimant must demonstrate that it was the owner of property and that some portion of the

property was taken for a public purpose); *see also United States v. Dow*, 357 U.S. 17 (1958) (Anti-Assignment Act prohibits the voluntary transfer of takings claims); *Applegate v. United States*, 35 Fed. Cl. 406 (1996) (same); *Creppel v. United States*, 33 Fed. Cl. 590 (1995) (same). In short, these claims are personal to Con Edison and not transferable. 31 U.S.C. § 3727. As such, there are no "overlapping" or "common" issues between the claims being asserted by Con Edison and ENIP.

## III. THE GOVERNMENT'S BASES FOR SNF CASE CONSOLIDATION HAVE PREVIOUSLY BEEN REJECTED

The Government has on prior occasions attempted to have other SNF cases consolidated without success. For instance, Chief Judge Damich has already denied consolidation of SNF cases based on the rationale that the Government intends to raise the same defenses in different cases, rejecting the Government's argument that multiple proceedings create a potential for variant rulings. *See, e.g., Yankee Atomic Elec. Co. v United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004). Furthermore, during an August 6, 2004 hearing in the *Con Edison* matter, Judge Bruggink expressed an inclination against consolidation of these two cases:

> [I] would probably not stay this proceeding. I would probably go ahead and allow the Plaintiff to make its motion on liability and require a government response to it and have the government trot out whatever dispositive theories it wants on liability on the assumption that that doesn't trigger any further discovery and then postpone all discovery related to damages until after that's resolved. * * * By the way, I don't think I would consolidate them. I think, for the time being, I think it's adequate to have them on the same docket. Consolidation has all kinds of other implications, but, anyway, that's my thought.

*See* Hearing Transcript, dated Aug. 6, 2004, at 36-38, attached hereto as Exhibit 2. As such, Con Edison urges the Court to maintain its previous position that consolidation is

not appropriate in these cases, and that the fair and efficient administration of justice can be achieved with the two cases proceeding independently.

## IV. CON EDISON WOULD BE SEVERELY PREJUDICED BY CONSOLIDATION

Beyond the lack of legal justification for consolidating Con Edison's and ENIP's claims, consolidation would cause extreme prejudice to Con Edison's attempts to seek redress from the Government. Consolidating the cases would severely disadvantage Con Edison by placing it in the queue behind numerous other SNF cases, and holding Con Edison's case hostage to the final resolution of myriad forward-looking issues that do not relate to or form the basis for its claims.

Consolidation would thus make the resolution of Con Edison's claims beholden to the timetable of more than sixty (60) other SNF cases including ENIP's. Con Edison's discovery and claims are historically based and set as of 2001, whereas other SNF cases are necessarily forward-looking, deal with more complex legal issues, and require evidence regarding DOE's future actions.[5]

Con Edison's case, in stark contrast, presents essentially no intractable factual issues and will not require a large amount of discovery. As such, it will be ready to go

---

[5] Two of the SNF decisions that have been issued to date portray just how perplexing and difficult from a case management perspective these forward-looking issues surrounding the Government's future SNF performance will be. While varying in their specific provisions, both *Indiana Michigan Power Co. v. United States*, No. 98-486C (Fed. Cl. filed May 25, 2004) (Hodges, J.) and *TVA v. United States*, No. 01-249C (Fed. Cl. filed June 2, 2004) (Lettow, J.) specifically contemplate prolonged litigation potentially lasting for *decades*. Under both decisions the Standard Contract holders' cases will be held open pending proof that future specific costs are incurred and demonstrations of causation, and their linkage with the then-current status of the DOE repository program. These seemingly endless judicial revisitations of SNF status will presumably continue until all SNF has left each plaintiffs' nuclear facility sites. While such arrangements might be suitable for plaintiffs who are continuing to contend with ongoing SNF management, it would be wholly inappropriate to require a claimant whose damages were incurred years ago (and are no longer continuing) to await such an indeterminate and interminable fate.

to trial much sooner than other SNF cases. However, were the cases to be consolidated, Con Edison would instead be forced to stand by while distinct and unrelated issues are litigated, as discussed *supra*, incurring additional legal fees and the consequences of interminable delays. Because Con Edison is not entitled to pre-judgment interest on its breach claim, every day of delay – made that much longer through consolidation – could become a windfall to the Government and a compounding of the injuries Con Edison has sustained as a result of the Government's actions and inactions. Accordingly, consolidation is inappropriate in this case and the Government's Motion should be denied.

## V. THE GOVERNMENT HAS SUCCESSFULLY CONCLUDED OTHER SNF LITIGATION WITHOUT CONSOLIDATION

The consolidation urged by the Government here is particularly remarkable given its actions in *Exelon Generation Co. LLC v. United States*, No. 04-102C (Fed. Cl. filed Jan. 28, 2004). The Government asserts here that absent consolidation, "there is a substantial risk of inconsistent judgments between [this case and ENIP]" Motion at 5. According to the Government, double recovery might occur because the post-breach assignee of the Indian Point 2 Standard Contract "has received compensation from Con Ed[ison] – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance" *Id.* at 10. From all this, the Government contends that "double liability" is imminent without consolidation.

The Government's concerns, however, neither triggered an effort to consolidate nor adversely affected or frustrated the August 5, 2004 settlement of *Exelon* and related cases. Among the claims settled by the Government in *Exelon* are assertions of damages associated with dry cask storage costs at the Peach Bottom nuclear plant acquired in part by *Exelon* in October 2000. *Exelon* was brought subsequent to cases initiated by

Atlantic City Electric Company ("Atlantic City") and Delmarva Power and Light Company ("Delmarva"), utilities that until 2000 and 2001 (several years after the Government's failure to dispose of SNF) had ownership interests in the Peach Bottom nuclear plants.

Atlantic City's and Delmarva's complaints assert the same diminished value of Standard Contract rights and nuclear assets that triggered the supposed concerns about double liability expressed in the Government's current brief. Nonetheless, and despite the same factual circumstances of "a reduced purchase price . . . for DOE's delay in beginning SNF acceptance" (*id*.), the recent settlement provides Exelon with $54,218,880 in settlement of claims related to the Peach Bottom plant.

The Government quite obviously determined that it could finally conclude *Exelon* without consolidation, despite the continuing pendency of complaints by Peach Bottom owners at the time of the Government's failure to dispose of SNF. It is thus particularly disingenuous for the Government to suggest here that consolidation should be required for Con Edison's and ENIP's claims.

The threat of potential double liability which is advanced here as a significant reason for consolidation has indisputably not been a factor frustrating or adversely affecting the successful resolution of post-default buyer's claim asserted by Exelon. Consistency with the course which has actually been pursued by the Government in Exelon compels the conclusion that the grounds for consolidation advanced by the Government here are specious and should be rejected.

## CONCLUSION

For all of the foregoing reasons, Con Edison respectfully requests that the Court deny the Government's Motion to Consolidate Con Edison and ENIP.

Date: August 23, 2004

Respectfully submitted,

By: /s Richard J. Conway
Richard J. Conway
Dickstein Shapiro Morin
& Oshinsky LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel:

David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
Dickstein Shapiro Morin
& Oshinsky LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison
Company of New York, Inc.
4 Irving Place -- 1830
New York, NY 10003
(212) 460-4333

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on August 23, 2004 a copy of the foregoing "Consolidated Edison Company of New York, Inc.'s Opposition to Defendant's Motion to Consolidate" was filed electronically. I understand that the notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

*Counsel of Record for*
*Consolidated Edison Company*
*of New York, Inc.*