CONFORMED COPY

# GENERATING PLANT AND GAS TURBINE ASSET PURCHASE AND SALE AGREEMENT

FOR

INDIAN POINT GENERATING STATION
UNITS 1 AND 2 AND GAS TURBINE UNITS 1, 2 AND 3
AND
TODDVILLE TRAINING CENTER

LOCATED AT VILLAGE OF BUCHANAN AND/OR
THE TOWN OF CORTLANDT
WESTCHESTER COUNTY, NEW YORK

By and Between

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.

-and

ENTERGY NUCLEAR INDIAN POINT 2, LLC

Dated as of November 9, 2000

[NYCorp;1173312.1:4738W:11/14/00-11:45a]

SECTION 2.02. Auctioned Assets and Retained Assets. (a) Auctioned Assets. The term "Auctioned Assets" means all the assets, real and personal property, goodwill and rights of Seller of whatever kind and nature, whether tangible or intangible, in each case, constituting, relating primarily to, or used primarily in the operation of, the Generating Plants or the Gas Turbines, other than the Retained Assets, including:

(i) (A) all land owned by Seller relating primarily to the operations of the Generating Plants shown on the Indian Point Conveyance Plan as "Buyer Parcel - Indian Point" and described in Schedule 2.02(a)(i)(A) together with all buildings and improvements erected thereon, (B) both (1) the leasehold interest in the land shown on the Indian Point Conveyance Plan as "Buyer Parcel - GT Site" and described in Schedule 2.02(a)(i)(B) (the "GT Site") to be created pursuant to the GT Site Ground Lease, and (2) all buildings and improvements erected on the GT Site, and (C) all land owned by Seller constituting, relating primarily to, or used primarily in the operation of the Toddville Training Center shown on the Toddville Conveyance Plan and described in Schedule 2.02(a)(i)(C) together with all buildings and improvements erected thereon, subject in each case to all Permitted Exceptions (the "Buyer Real Estate");

(ii) subject, in each case, to Permitted Exceptions, all inventories of fuels (relating primarily to, or used primarily in the operation of, the Generating Plants or the Gas Turbines) and Nuclear Fuel, in each case owned by Seller on the Closing Date, Spent Nuclear Fuel located on Buyer Real Estate on the Closing Date, and all Inventory, in each case other than assets that are used, consumed, replaced or disposed of in the ordinary course of business consistent with past practice or as permitted by this Agreement, together with all warranties from third parties, including manufacturers and vendors relating thereto, to the extent transferable;

(iii) subject, in each case, to Permitted Exceptions, all machinery (mobile or otherwise), equipment, facilities, furniture and other personal property relating primarily to, or used primarily in the operation of, the Generating Plants or the Gas Turbines or the Toddville Training Center, including the items of personal property listed in Schedule 2.02(a)(iii), together with all warranties from third parties, including manufacturers and vendors relating

thereto, to the extent transferable, other than assets that are used, consumed, replaced or disposed of in the ordinary course of business consistent with past practice or as permitted by this Agreement;

(iv) subject to Sections 2.02(b)(x) and 2.04, all right, title and interest of Seller in, to and under all contracts, agreements, leases, licenses (whether Seller is lessor, lessee, licensor or licensee thereunder), commitments, and all other legally binding arrangements (A) set forth in Schedule 2.02(a)(iv), (B) associated with emergency preparedness (including those relating to emergency sirens or radiation monitors), (C) between Seller and NYPA primarily related to the operation or maintenance of the Auctioned Assets, but excluding any such contracts, agreements, leases, licenses, or commitments pertaining to Seller's obligations relating to the Transmission System, the Substation or the supply of power or (D) entered into by Seller between the date of this Agreement and Closing in accordance with Section 6.01, in each case, to the extent they have not expired prior to Closing (the "Contracts");

(v) the Permits, Environmental Permits and NRC Permits that are transferred or transferable by Seller to Buyer by assignment or otherwise or which will pass to Buyer as successor in title to the Generating Plants or Gas Turbines (collectively, the "Transferable Permits"), including the Transferable Permits set forth in Schedule 2.02(a)(v);

(vi) (A) data, information, books, operating records, operating, safety, quality assurance and maintenance manuals, engineering design information and plans, blueprints and as-built plans, specifications, procedures, facility compliance plans, environmental procedures and other records of Seller relating primarily to the design, construction, licensing, regulation, operation or Decommissioning of the Auctioned Assets, whether existing in paper, magnetic or electronic form, including third party designs, drawings and specifications used in, or necessary for, the licensing, operation or Decommissioning of the Auctioned Assets (collectively, "Operating Records"), (B) to the extent permitted or required by Law, all personnel files relating to Continued Employees, including files that pertain to (1) skill and development training and resumes, (2) seniority histories, (3) salary and benefit information, (4) active medical restriction forms, (5) records that

[NYCorp;1173312.1:4738W:11/14/00-11:45a]

are required to be retained by Buyer pursuant to 10 C.F.R. Section 26 and (6) any other matters, but not including any performance evaluations, disciplinary records, fitness for duty reports or Occupational Safety and Health Act medical reports (other than such evaluations, records or reports necessary for Buyer to satisfy the requirements of NRC Law or any NRC permit) (collectively, the "Continued Employee Records") and (C) all accounting and other records related to the Decommissioning Funds (other than general ledger accounting records) (collectively, the "Decommissioning Accounting Records"); provided, however, that Seller shall be permitted to retain copies to the extent it provides Buyer with copies or originals of same, of all Operating Records, Continued Employee Records and Decommissioning Accounting Records;

(vii) subject to Sections 2.04 and 7.02(d), the Patents, all rights of Seller in and to the name "Indian Point 2 Nuclear Power Station" and any related or similar names and the right to use at, or in connection with, the Generating Plants or the Gas Turbines all other Intellectual Property relating primarily to, or used primarily in the operation of, the Generating Plants or the Gas Turbines;

(viii) the assets of the Decommissioning Funds contemplated by Sections 6.07(a) and (b) to be transferred to Buyer;

(ix) any credit or credits associated with assessments for the disposal of Low-level Radioactive Waste accumulated by Seller prior to Closing pursuant to the New York Public Authorities Law Section 1854-d.2, as amended, to the extent assignable to Buyer;

(x) the Nitrogen Oxide Allowances set forth in Schedule 2.02(a)(x) that are allocated by NYSDEC to the Gas Turbines for the control periods in 2001 and 2002, but less any such Nitrogen Oxide Allowances (or portions thereof) that are used by Seller in connection with operating the Gas Turbines prior to Closing consistent with past practices and system reliability requirements of Seller (it being understood that, for purposes of this Agreement, one Nitrogen Oxide Allowance shall be deemed "used" for each ton of nitrogen oxide emitted from the Gas Turbines between May 1 of any year and September 30 of such year, inclusive);

(xi) all claims or causes of action for the refund or return of any payments made or to be made (including any Spent Nuclear Fuel Fees paid or payable) pursuant to the DOE Standard Contract with regard to electricity generated at the Generating Plants and sold on or prior to Closing, but specifically excluding any claims or causes of action in respect of damages to property or economic loss related or pertaining to the Department of Energy's breach or default under the DOE Standard Contract accrued prior to Closing;

(xii) to the extent transferable to Buyer, Seller's ANI primary nuclear liability policy (facility policy), secondary financial protection and master nuclear worker liability policy (master worker policy), and all rights to premium refunds or premium returns (including shutdown credits and premium returns under the Industry Credit Rating Program) that relate to premiums paid by Buyer (including premiums which are Prorated Items, to the extent paid by Buyer) for periods after Closing pursuant to such policies; and

(xiii) Seller's claims and rights against any third party arising out of or relating to any of the Assumed Obligations.

(b) Retained Assets. The term "Retained Assets" means:

(i) except (A) as set forth in Schedule 2.02(a)(iii) or (B) as located on Buyer Real Estate and not set forth in Schedule 2.02(b)(i), all Interconnection Facilities and transmission and distribution assets owned, controlled or operated by Seller for purposes of providing transmission service (including point-to-point transmission service), network integration service and distribution service and other related purposes, including the real property and substation machinery, equipment and facilities located at the Buchanan Substation (the "Substation") used in controlling continuity between the Generating Plants and Gas Turbines and the transmission and distribution facilities and for other purposes (the "Transmission System");

(ii) (A) all Revenue Meters installed by Seller; (B) all Communications Equipment and related support equipment (1) located on Buyer Real Estate or temporarily removed from Buyer Real Estate for repairs, servicing or maintenance and listed in Schedule 2.02(b)(ii)(B) or acquired by Seller after the date of

{NYCorp;1173312.1:4738W:11/14/00-11:45a}

this Agreement and designated by Seller as a Retained Asset or (2) located on Seller Real Estate or temporarily removed from Seller Real Estate for repairs, servicing or maintenance; and (C) all Protective Relaying Systems not located on Buyer Real Estate;

(iii) except as set forth in Section 2.02(a)(viii), all cash, cash equivalents, bank deposits and accounts receivable held or owned by Seller (including Seller's account balances with NEIL);

(iv) (A) all mainframe computers of Seller and (B) all Intellectual Property relating primarily to any other Retained Assets or any Retained Liabilities;

(v) the names "Consolidated Edison", "Con Edison", "Con Ed", "Consolidated Edison Company", "Consolidated Edison Company of New York, Inc.", "Consolidated Edison, Inc.", "New York Edison", "Brooklyn Edison", "Staten Island Edison" and "Edison" and any related or similar trade names, trademarks, service marks or logos (and any rights to and in the same, including any right to use the same);

(vi) subject to Section 6.06(c), any refund or credit related to Taxes or sewer rents or water charges or any other liabilities or obligations in respect of the Auctioned Assets, in each case, attributable to periods (or portions thereof) prior to Closing;

(vii) except as set forth in Section 2.02(a)(xii), (A) all insurance policies of Seller related to the Auctioned Assets, including all Nuclear Insurance Policies, and (B) all rights to distributions, credits (including shutdown credits), premium refunds or premium returns (including shutdown credits and premium returns under the Industry Credit Rating Program) under all insurance policies, including all such rights to (i) Seller's member insurance accounts, policyholder insurance records and policyholder percentages under its Nuclear Insurance Policies and (ii) Seller's future distributions, credits, premium refunds or premium returns from its Nuclear Insurance Policies;

(viii) all claims or causes of action for refunds of Department of Energy Decontamination and Decommissioning Fees, in each case, paid by Seller as contemplated by Section 2.03(b)(iv);

[NYCorp;1173312.1:4738W:11/14/00-11:45a]

(ix) all personnel records (other than Continued Employee Records) and all other records (other than Operating Records and Decommissioning Accounting Records);

(x) all claims or causes of action in respect of damages to property or economic loss related or pertaining to the Department of Energy's breach or default under the DOE Standard Contract accrued prior to Closing, but specifically excluding any claims or causes of action for the refund or return of any payments made or to be made (including any Spent Nuclear Fuel Fees paid or payable) pursuant to the DOE Standard Contract with regard to electricity generated at the Generating Plants and sold on or prior to Closing;

(xi) all emission reduction credits, sulfur dioxide allowances and Nitrogen Oxide Allowances that relate to the Retained Assets or any other of Seller's assets that are not Auctioned Assets (excluding, for clarification, any Nitrogen Oxide Allowances allocated by NYSDEC to the Gas Turbines for periods after Closing), and, except as set forth in Schedule 2.02(a)(x) and except as set forth in Section 2.02(a)(ix), all other environmental related allowances and credits of any nature held or possessed by Seller; and

(xii) any other asset that is not described in this Agreement as an Auctioned Asset.

SECTION 2.03. Assumed Obligations and Retained Liabilities. (a) Assumed Obligations. At Closing, Buyer shall assume, and after Closing, shall discharge, all of the following liabilities and obligations, direct or indirect, known or unknown, absolute or contingent, which relate to the Auctioned Assets or are otherwise specified below (collectively, the "Assumed Obligations"):

(i) except as set forth in Section 2.03(b)(ii), any liabilities and obligations under the Contracts, except, in each case, to the extent such liabilities and obligations, but for a breach or default by Seller prior to Closing, would have been paid, performed or otherwise discharged on or prior to Closing, or to the extent the same arise out of any such breach or default;

(ii) any liabilities and obligations for goods delivered or services rendered, in the ordinary course

{NYCorp;1173312.1:4738W:11/14/00-11:45a}

ORIGINAL

FILED JAN 1 3 2004 U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff, | ) | No. 04-0033C |
| v. | ) | |
| UNITED STATES OF AMERICA, Defendant. | ) | |

## COMPLAINT

1. This is an action for damages by Plaintiff, Consolidated Edison Company of New York, Inc. ("Con Edison"), against Defendant, the United States of America, acting by and through the U.S. Department of Energy ("DOE"), for breach of contract and breach of the implied covenant of good faith and fair dealing, and for just compensation for uncompensated taking in violation of the Fifth Amendment to the U.S. Constitution. These damages have been caused by DOE's failure to meet its obligations under the Nuclear Waste Policy Act of 1982 ("NWPA" or "Act"), as amended, 42 U.S.C. § 10101 *et seq.*, and its contract with Con Edison to begin removal and disposal of Spent Nuclear Fuel and high-level nuclear waste ("SNF") from the Indian Point 1 and 2 (collectively, "Indian Point") nuclear electric generating facilities.

2. From the 1960s, and prior to September 6, 2001, Con Edison was the sole owner and operator of the Indian Point nuclear electric generating facilities in Buchanan, New York.

3. Pursuant to NWPA, DOE entered into a "Standard Contract" with each of the nation's commercial nuclear power plant owners, including Con Edison, which required DOE, in return for payments of substantial fees by the owners into a Nuclear

Waste Fund created by NWPA, to commence accepting and permanently disposing of the SNF from these nuclear facilities by January 31, 1998. The Standard Contract was an important and integral element of Con Edison's conduct of its business of generating electricity at Indian Point, in that it provided for the orderly disposal of SNF and high-level nuclear waste produced during the normal course of operations. The Standard Contract also facilitated the timely and orderly completion of post-retirement activities following the end of Indian Point's life as a nuclear electric generating facility.

4. Con Edison sold Indian Point to Entergy Nuclear Indian Point 2, LLC ("Entergy") on September 6, 2001. As part of the sales transaction for Indian Point, Con Edison assigned its DOE Standard Contract (which was then in breach) to Entergy, subject to a reservation of certain rights and claims which are the subject of this complaint. By the closing date of Con Edison's sale of Indian Point, Con Edison's payments into the Nuclear Waste Fund exceeded $115 million.

5. Notwithstanding Con Edison's payments and DOE's corresponding SNF disposal obligations under NWPA, DOE did not take custody or dispose of any of Con Edison's SNF either by January 31, 1998, the performance deadline specified in NWPA and the Standard Contract, or by the closing date of Con Edison's sale of Indian Point. By the closing date of Con Edison's sale of Indian Point, there was no prospect that DOE would take custody or dispose of SNF from Indian Point in the foreseeable future because DOE had not then (and has not to this day) sited, licensed, constructed, or placed in operation an SNF disposal facility, or made provisions for the temporary storage of SNF until such time as a permanent SNF facility becomes available.

6. As a direct and proximate result of DOE's failure to meet its statutory and contractual obligations to remove SNF, the value of Con Edison's nuclear electric

generating assets was substantially reduced, such that Con Edison realized significantly less value upon the sale of Indian Point than would have been the case had DOE properly fulfilled its contractual and statutory obligations. The value of Indian Point was significantly diminished when it became apparent that DOE would not begin accepting and removing SNF by January 31, 1998, and this diminution continued after this deadline as DOE's statutory violation continued and no SNF disposal solution was in sight. This caused potential buyers to elect not to participate in the sales process for nuclear facilities or to drastically reduce the price they were prepared to pay, taking into account the increased risk associated with DOE's failure to perform, the attendant uncertain life expectancy of Indian Point as a viable nuclear electric generating facility, and the capital expenses and other costs associated with storing SNF at Indian Point indefinitely.

7. In addition, as an integral part of the Indian Point sales process, Con Edison was required by rules and regulations of the federal Nuclear Regulatory Commission (the "NRC") to fully fund the costs of retirement, dismantlement, decontamination, decommissioning, and SNF management of Indian Point in such amounts as Entergy and the NRC determined sufficient. Such amounts were substantially in excess of what would have been required if DOE had met its obligations under the Standard Contract and NWPA.

8. Con Edison also incurred significant costs associated with the interim storage of its SNF up to the closing date of its sale of Indian Point, including additional capital expenses, as well as related operating and maintenance expenses. These costs would not have been incurred had DOE begun the acceptance and removal of SNF by January 31, 1998, as required. Con Edison seeks damages for such costs as it incurred

up to the date of sale of Indian Point that would not have been incurred had DOE performed its statutory and contractual obligations pertaining to SNF disposal.

9. Con Edison's case is distinguishable from the SNF cases previously filed and presently pending before this Court. The pending cases have been filed predominately by the existing owner/operators of nuclear facilities seeking damages related to on-going SNF storage costs. By contrast, as a seller of a nuclear electric generating facility, Con Edison is seeking damages associated with the diminished value it realized in the sale of Indian Point which are a direct and proximate result of DOE's failure to meet its obligations under the Act and Standard Contract, as well as other related costs incurred up to the closing date of the sale. Unlike the existing owner/operator cases, Con Edison's damages are fixed and readily ascertainable as of the closing date of its sales transaction.

## JURISDICTION

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491(a)(1).

## PARTIES

11. Plaintiff Con Edison is a public utility company incorporated under the laws of the State of New York, and is subject to the regulatory jurisdiction and oversight of the New York Public Service Commission ("NYPSC") with respect to the disposition of its regulated assets (such as Indian Point) and the rates it can charge with respect to the use of those assets.

12. Con Edison is an investor-owned energy company, with approximately $9 billion in annual revenues and approximately $19 billion in assets. Pursuant to the regulatory jurisdiction of NYPSC, Con Edison provides a wide range of

energy-related products and services to its customers. Con Edison serves over 3.3 million electric customers in the New York City metropolitan area and Westchester County, New York.

13. Defendant is the United States of America, acting by and through DOE.

**BACKGROUND**

14. For more than fifty years, the federal government systematically acted to induce electric utilities, including Con Edison, to invest in nuclear technology on the promise, both implied and explicit, that key issues affecting utilities' utilization of the technology would be resolved in a timely and economic manner. Among the promises of the federal government was that it would adequately provide for assuming custody and disposal of SNF. Con Edison relied on these representations and made substantial capital investments in the construction of nuclear facilities in order to support their continued operation. It was reasonable for electric utilities, including Con Edison, to have relied on the federal government to exercise its reasonable efforts to perform and fulfill its own promises.

15. On December 8, 1953, President Dwight D. Eisenhower announced to the United Nations his intent to employ nuclear materials "to provide abundant electrical energy in the power-starved areas of the world." Dwight D. Eisenhower, Address Before the General Assembly of the United Nations on Peaceful Uses of Atomic Energy, New York City (Dec. 8, 1953), *in Public Papers of the Presidents: Dwight D. Eisenhower* ¶ 256, at 821 (1953). The Atomic Energy Act of 1954 was subsequently passed on August 30, 1954. Notably, the Atomic Energy Act instructed the U.S. Atomic Energy Commission ("AEC"), the predecessor agency to the NRC, to encourage

S 5

# Department of Energy

Washington, DC 20585

MAR 1 3 1997

Mr. Joseph A. Pezzello
Principal Engineer
Reactor & Fuel Engineering
Consolidated Edison Company of
New York, Inc.
4 Irving Place (Room 643S)
New York, NY 10003

DCS 02-1102-4373-01

Dear Mr. Pezzello:

The Department of Energy has received your Delivery Commitment Schedule (DCS) submitted pursuant to Article V.B of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste.

The Department is not able at this time to approve your DCS submittal. Consequently, the Department hereby waives until further notice the contract requirement that you provide a revised schedule within 30 days.

As you know, my letter of December 17, 1996, invited submission of views by all contract holders on how the anticipated delay can best be accommodated. The Department looks forward to receipt of those views by March 14, 1997, and will advise you promptly of further developments in this program as they occur.

If you have any questions regarding this matter, please contact me at 202-426-0076, or Mr. Dave Zabransky, Office of Civilian Radioactive Waste Management, at 202-586-9198.

Sincerely,

Beth A. Tomasoni

Beth A. Tomasoni
Contracting Officer
Office of Placement and Administration

OMB No.: 1901-0260
Expires: 06/31/97

# U.S. DEPARTMENT OF ENERGY
## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

...collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for ...Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this ...formation is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the ...and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including ...for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and ...atory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 Name of Purchaser: Consolidated Edison Co. of NY

1.2 DCS Identification Number: 02-1102-4373-01

1.3 Contact Person:
(a) Name: Joseph A. Pezzello
(b) Telephone: (212) 460-4821

1.4 Contract Number: DE-CR01-83NE44373

1.5 Reactor/Facility Information:
(a) Name: Indian Point Station
(b) Address: ~~Broadway & Bleakley Ave.~~
(c) City: ~~Buchanan~~
(d) State: N.Y. (e) Zip Code: 10511

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 40
2.2 Proposed Shipping Mode: Truck X ; Rail ____; Barge ____
2.3 Proposed Delivery Year: ~~1998~~ 2002
2.4 Range of Discharge Dates: ~~03 30 76~~ to 02 04 95
(Earliest to Latest) Mo/Day/Yr to Mo/Day/Yr
2.5 Metric Tons Uranium: (Initial) 27.10
2.6 Number of Assemblies: BWR ____ PWR 60 Other ____

### 3.0 CERTIFICATIONS

**Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.**

3.1 [signature] Authorized Purchaser Signature — Date: Sept. 27, 1996

3.2 Joseph A. Pezzello — Name (Please Type or Print)

3.3 Principal Engineer Reactor & Fuel Engineering — Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the Unites States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE ACTION

4.1 [X] Approved [ ] Disapproved

Void 2/27/97 DK

4.2 [signature] Technical Representative — Title: COTR — Date: 12/30/96

[signature] Contracting Officer — Date: ~~1/4/97~~ void 3/13/97



Copy Distribution: 1 White, DOE-Contracting Officer; 2 ... E-EIA; 1 Goldenrod, Utility Copy

**Department of Energy**
Washington, DC 20585

February 16, 2000

DCS
04-1102-4373-01

Mr. Joseph A. Pezzello
Principal Engineer
Reactor & Fuel Engineering
Consolidated Edison of New York, Inc.
4 Irving Place
New York, NY 10003

Dear Mr. Pezzello:

This responds to your letter of September 24, 1999. The Department of Energy received your Delivery Commitment Schedule (DCS) for Indian Point Station Unit 2 DCS number 04-1102-4373-01 (contract number DE-CR01-83NE44373) for 2004. The DCS was submitted pursuant to Article V.B. and Appendix C "Delivery Commitment Schedule" of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10CFR961).

The Department is not able at this time to approve your DCS submittal. Consequently, the Department hereby waives until further notice the contract requirement that you provide a revised schedule within 30 days.

If you have any questions regarding this matter, please contact me at 202-426-0045, or Mr. Dave Zabransky, Office of Civilian Radioactive Waste Management, at 202-586-9198.

Sincerely,

Arnold A. Gjerstad
Contracting Officer
Headquarters Procurement Services

/93

OMB No.: 1901-0260
Expires: 05/31/97

# U.S. DEPARTMENT OF ENERGY
## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 Name of Purchaser: Consolidated Edison Co. of N.Y., Inc.

1.4 Contract Number: DE-CR01-83NE44373

1.2 DCS Identification Number: 04-1102-4373-01

1.5 Reactor/Facility Information:
(a) Name: Indian Point Station
(b) Address: Broadway & Bleakley Ave.
(c) City: Buchanan
(d) State: N.Y. (e) Zip Code: 10511

1.3 Contact Person:
(a) Name: Joseph A. Pezzello
(b) Telephone: ( 212 ) 460-4821

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 40
2.2 Proposed Shipping Mode: Truck X ; Rail ___ ; Barge ___
2.3 Proposed Delivery Year: Annual Acceptance Capacity Allocations, Year 7
2.4 Range of Discharge Dates: (Earliest to Latest) 03 30 76 (Mo/Day/Yr) to 02 04 95 (Mo/Day/Yr)
2.5 Metric Tons Uranium: (Initial) 28.3
2.6 Number of Assemblies: BWR ___ PWR 62 Other ___

### 3.0 CERTIFICATIONS

**Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.**

3.1 Joseph A. Pezzello (signature) — Authorized Purchaser Signature; Date: September 24, 1999

3.2 Joseph A. Pezzello — Name (Please Type or Print)

3.3 Principal Engineer Reactor & Fuel Engineering — Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the Unites States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE ACTION

4.1 ☐ Approved ☐ Disapproved

4.2 ___ Technical Representative ___ Title ___ Date

___ Contracting Officer ___ Date



Copy Distribution: 1 White, DOE-Contracting Officer; 2 Bl· ... :IA; 1 Goldenrod, Utility Copy

**Department of Energy**
Washington, DC 20585

February 16, 2000

Mr. Joseph A. Pezzello
Principal Engineer
Reactor & Fuel Engineering
Consolidated Edison Company of New York, Inc.
4 Irving Place
New York, NY 10003

Dear Mr. Pezzello:

This responds to your letter of September 27, 1999. The Department of Energy received your Delivery Commitment Schedule (DCS) for Indian Point Station Unit 2 DCS number 05-1102-4373-01 (contract number DE-CR01-83NE44373) for 2005. The DCS was submitted pursuant to Article V.B. and Appendix C "Delivery Commitment Schedule" of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10CFR961).

The Department is not able at this time to approve your DCS submittal. Consequently, the Department hereby waives until further notice the contract requirement that you provide a revised schedule within 30 days.

If you have any questions regarding this matter, please contact me at 202-426-0045, or Mr. Dave Zabransky, Office of Civilian Radioactive Waste Management, at 202-586-9198.

Sincerely,

Arnold A. Gjerstad
Contracting Officer
Headquarters Procurement Services

OMB No.: 1901-0280
Expires: 08/31/97

# U.S. DEPARTMENT OF ENERGY
## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

...formation is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for ...osal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this ...ection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 Name of Purchaser: Consolidated Edison Co. of N.Y., Inc.

1.4 Contract Number: DE-CR01-83NE44373

1.2 DCS Identification Number: 05-1102-4373-01

1.5 Reactor/Facility Information:
(a) Name: Indian Point Station
(b) Address: Broadway & Bleakley Ave.
(c) City: Buchanan
(d) State: N.Y. (e) Zip Code: 10511

1.3 Contact Person:
(a) Name: Joseph A. Pezzello
(b) Telephone: ( 212 ) 460-4821

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 40
2.2 Proposed Shipping Mode: Truck X ; Rail ____ ; Barge ____
2.3 Proposed Delivery Year: 2005 Annual Acceptance Capacity Allocations, Year 8
2.4 Range of Discharge Dates: (Earliest to Latest) 03-30-76 Mo/Day/Yr to 02-04-95 Mo/Day/Yr
2.5 Metric Tons Uranium: (Initial) 2.3
2.6 Number of Assemblies: BWR ____ PWR 5 Other ____

### 3.0 CERTIFICATIONS

Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.

3.1 Joseph A. Pezzello (signature) — Authorized Purchaser Signature — September 27, 1999 — Date

3.2 Joseph A. Pezzello — Name (Please Type or Print)

3.3 Principal Engineer Reactor & Fuel Engineering — Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the Unites States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE ACTION

4.1 ☐ Approved ☐ Disapproved

4.2 ____ Technical Representative ____ Title ____ Date

____ Contracting Officer ____ Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 ... 1A: 1 Goldenrod, Utility Copy

(2)

Department of Energy
Washington, DC 20585

OCT 2 5 2000

Mr. Joseph A. Pezzello
Principal Engineer
Reactor & Fuel Engineering
Consolidated Edison Company of New York, Inc.
1 Park Place
Peeskill, NY 10566

Dear Mr. Pezzello:

The Department of Energy received your Delivery Commitment Schedule (DCS) for Indian Point 2, DCS number 06-1102-4373-01 (contract number DE-CR01-83NE44373) for 2006. The DCS was submitted pursuant to Article V.B. and Appendix C "Delivery Commitment Schedule" of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10CFR961).

The Department is not able at this time to approve your DCS submittal. Consequently, the Department hereby waives until further notice the contract requirement that you provide a revised schedule within 30 days.

If you have any questions regarding this matter, please contact me at 202-426-0077, or Mr. Dave Zabransky, Office of Civilian Radioactive Waste Management, at 202-586-9198.

Sincerely,

Herbert D. Watkins
Contracting Officer
Headquarters Procurement Services

OC
d 09/10/93

OMB No.: 1901-0260
Expires: 05/31/97

# U.S. DEPARTMENT OF ENERGY
## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 Name of Purchaser: Consolidated Edison Co. of N.Y., Inc.

1.4 Contract Number: DE-CR01-83NE44373

1.2 DCS Identification Number: 05-1102-4373-01

1.5 Reactor/Facility Information:
(a) Name: Indian Point Station
(b) Address: Broadway & Bleakley Ave.
(c) City: Buchanan
(d) State: N.Y. (e) Zip Code: 10511

1.3 Contact Person:
(a) Name: Joseph A. Pezzello
(b) Telephone: (914) 788-3262

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 40
2.2 Proposed Shipping Mode: Truck X; Rail ____; Barge ____
2.3 Proposed Delivery Year: Annual Acceptance Capacity Allocations, Year 9
2.4 Range of Discharge Dates: (Earliest to Latest) 03-30-76 Mo/Day/Yr to 10-05-87 Mo/Day/Yr
2.5 Metric Tons Uranium: (Initial) 22.2
2.6 Number of Assemblies: BWR ____ PWR 49 Other ____

### 3.0 CERTIFICATIONS

**Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.**

3.1 Joseph A. Pezzello (signature) — Authorized Purchaser Signature    September 14, 2000 — Date

3.2 Joseph A. Pezzello — Name (Please Type or Print)

3.3 Principal Engineer Reactor & Fuel Engineering — Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the United States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE ACTION

4.1 ☐ Approved ☐ Disapproved

4.2 ____ Technical Representative ____ Title ____ Date

____ Contracting Officer ____ Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 Blue A: 1 Goldenrod, Utility Copy