**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 21, 2005)

| | | |
|---|---|---|
| **ENTERGY NUCLEAR INDIAN POINT 2, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | ) | No. 03-2622C<br>(Judge Lettow) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Entergy Nuclear Indian Point 2, LLC

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, DC 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

October 21, 2005

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................... ii

**ARGUMENT** ..................... 2

I. ENIP And ConEd Are Still In Different Procedural Postures ..................... 3

II. ENIP And ConEd Are Seeking Non-Overlapping Damages Based On Different Timeframes ..................... 4

A. ENIP's Damages Are Largely Based On DOE's Continued Nonperformance ..................... 5

B. ConEd's Damages Are Based On Past Events ..................... 6

C. ConEd's "Diminution In Value" Claim Has No Bearing On ENIP's Damages ..................... 6

III. The Government's Other Reasons For Consolidation Are Not Unique To ENIP's Case, And This Court Has Repeatedly Declined To Consolidate The SNF Cases On These Grounds ..................... 9

IV. The Use Of RCFC 14 Summons and Notice Is Inappropriate Here Since The Government Has No "Contingent Claim" Against ENIP ..................... 11

**CONCLUSION** ..................... 15

# TABLE OF AUTHORITIES

## Cases

Ala. Power Co. v. Dep't of Energy,
307 F.3d 1300 (11th Cir. 2002) .......... 13

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) .......... 3, 5

Boston Edison Co. v. United States,
67 Fed. Cl. 63 (2005) .......... 2, 7

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) .......... 10

Consol. Edison Co. of New York, Inc. v. United States,
62 Fed. Cl. 798 (2004) .......... 1, 3

Consol. Edison Co. of New York, Inc. v. United States,
67 Fed. Cl. 285 (2005) .......... 4

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002) .......... 8, 10

Entergy Nuclear Generation Co. v. United States,
64 Fed. Cl. 336 (2005) .......... 2, 3

Entergy Nuclear Indian Point 2, LLC v. United States,
64 Fed. Cl. 515 (2005) .......... 3

Indiana Michigan Power Co. v. United States,
57 Fed. Cl. 88 (2003) .......... 10

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) .......... 11

Karuk Tribe of Cal. v. United States,
27 Fed. Cl. 429 (1993) .......... 2

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) .......... 10

Penda Corp. v. United States,
44 F.3d 967 (Fed. Cir. 1994) .......... 13

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354 (1976) .......... 13

Southern Cal. Edison Co. v. United States,
226 F.3d 1349 (Fed. Cir. 2000).......... 12

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996).......... 9

**Constitution, Statutes, Rules & Regulations**

41 U.S.C. § 114.......... 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on October 21, 2005)

| | | |
|---|---|---|
| **ENTERGY NUCLEAR INDIAN POINT 2, LLC,** Plaintiff, | ) | |
| v. | ) | No. 03-2622C (Judge Lettow) |
| **THE UNITED STATES,** Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

Pursuant to RCFC 7.2(a), Plaintiff Entergy Nuclear Indian Point 2, LLC ("ENIP"), by and through its undersigned counsel, respectfully files this response to Defendant's (the "Government") Motion To Consolidate Or, In The Alternative, For Issuance Of A Summons Pursuant To RCFC 14(a) And Notice Pursuant To RCFC 14(b) dated September 23, 2005 ("Motion to Consolidate"). The Motion to Consolidate seeks to consolidate, pursuant to RCFC 42, ENIP's action with Consol. Edison Co. of New York, Inc. v. United States, No. 04-0033C ("ConEd"), a case over which the Court presides as well.[1] In its Motion, the Government has mischaracterized and overstated the significance of any commonalities, factual or otherwise, between this case and ConEd. In addition, many of the reasons that the Government has proffered in support of consolidation are not unique to this case, but merely repeat the same

[1] The Government had previously sought consolidation of this case with ConEd in "Defendant's Notice Of Directly-Related Cases, Defendant's Motion To Reassign Consolidated Edison And Entergy Nuclear To A Single Judge, And Defendant's Motion To Consolidate" dated August 5, 2004. In an Opinion and Order dated November 4, 2004, the Court declined to consolidate this case with ConEd. 62 Fed. Cl. 798, 803 (2004).

arguments that it has unsuccessfully put forward in its prior efforts to consolidate all the spent nuclear fuel ("SNF") damages cases – attempts that judges of this Court have repeatedly declined to grant over the last four years. For these and other reasons stated herein, the Motion to Consolidate should be denied. The Government's alternative motion for issuance of a summons to ENIP in ConEd and to ConEd in this case pursuant to RCFC 14(a) and for notice to ENIP and ConEd pursuant to RCFC 14(b) should also be denied, because the use of summons and notice is inappropriate here. Given the different nature of these plaintiffs' respective damages claims, the Government does not have the required "contingent claim" against ENIP.

## ARGUMENT

The propriety of consolidation depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation. Karuk Tribe of Cal. v. United States, 27 Fed. Cl. 429, 433 (1993). As explained below, any judicial economy to be gained from consolidation of these cases is minimal, while the potential for prejudice is substantial. Moreover, the burden is on the Government to demonstrate that this case should be consolidated with ConEd, and that burden has not been met.

ENIP is mindful of the Court's recent decision in Boston Edison Co. v. United States, 67 Fed. Cl. 63 (2005), in which two SNF cases involving the same nuclear plant (and the sale of that plant involving the plaintiffs in those cases) were consolidated for limited purposes. Id. at 67. Recognizing that some principles from the Boston Edison decision may apply to the Court's adjudication of the instant consolidation motion, ENIP respectfully submits that, at a minimum, the facts here are substantively different from Boston Edison in one important respect – as explained below, ENIP and ConEd have remained in divergent procedural postures since the Court denied the Government's previous motion to consolidate. The interests of judicial economy would not be served by consolidating two cases where one plaintiff (ENIP) has been

ready to proceed towards discovery and a trial on its breach of contract damages while the other plaintiff (ConEd) is moving on a different procedural and substantive path.[2] Thus, on balance, any benefits from formal consolidation with ConEd,[3] which benefits are not significant, are outweighed by the prejudicial delay and cost to ENIP that would surely be occasioned by such consolidation.

## I. ENIP And ConEd Are Still In Different Procedural Postures

Since the Government's first attempt to consolidate this case with ConEd in November 2004, the Court has held that the Government is liable for breaching ENIP's Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract") in this case. See 64 Fed. Cl. 515, 526 (2005). The Court noted that a trial "is necessary" to determine the "damages incurred between the date on which ENIP purchased the Indian Point facilities, September 6, 2001, and the date of its most recent fiscal year prior to the start of trial." Id. By contrast, the issue of the Government's liability for breach of contract has not yet been decided in ConEd, much less raised or briefed. Because the instant case and ConEd are in different procedural postures, for this reason alone, the Motion to Consolidate should be denied.

Indeed, as the Court recognized in denying the Government's November 2004 motion to consolidate, "[t]he strongest factor weighing against consolidation at this juncture is the divergent procedural posture of the cases." 62 Fed. Cl. at 803. Since the Court's November

---

[2] The potential prejudice to ENIP, on the other hand, may be substantial. For example, consolidation would necessarily delay ENIP's damages trial. Such a delay could result in substantial "lost" damages to ENIP because pre-judgment interest may be unavailable to SNF plaintiffs.

[3] ENIP recognizes that, in the interests of efficiency, some coordination of discovery with ConEd would likely be appropriate. See note 5 *infra*.

2004 decision, little has changed in this regard. The parties in ConEd filed briefs on the Government's motion to dismiss ConEd's claims and the Court issued a decision in August 2005 denying the Government's motion, 67 Fed. Cl. 285 (2005), but it appears that little if any activity has occurred with regard to the submission or resolution of ConEd's damages claim. In ENIP's case, however, the parties are well-positioned to begin fact and expert discovery for a damages trial, now that the Government's liability for breach has been established. As the Court is aware, ENIP has already proposed a schedule for further proceedings in this case, including a damages trial that would take place in April 2007. Joint Status Report at 2-3 (May 23, 2005). Moreover, during the past year, ENIP's experts have already performed substantive work in preparing to submit a damages claim to the Government in 2006. Thus, the Government cannot credibly dispute that the Court's reasons for denying consolidation in November 2004 still apply with equal force now.

## II. ENIP And ConEd Are Seeking Non-Overlapping Damages Based On Different Timeframes

The Government's primary rationale for consolidation is that ENIP's and ConEd's cases share "common issues of fact and law." Motion to Consolidate at 6. The two cases involve the same contract and same nuclear power facility (the Indian Point 2 plant). But the mere fact that ENIP's and ConEd's cases involve the same contract and plant does not, by itself, satisfy the requirements of RCFC 42. On the contrary, it appears likely that the trials of ENIP's and ConEd's damages claims will be substantively different in both fact and law.

The Government repeatedly suggests that this case and ConEd "share the same factual basis" or "predicate." E.g., Motion to Consolidate at 9 and 13. However, the central issues to be litigated – the damages incurred by ConEd on the one hand, and ENIP on the other hand – bear little resemblance. ENIP's damages claim will primarily be based on the Department of

Energy's ("DOE") continuing failure to accept any SNF from Indian Point 2 and will consist of the costs incurred to provide additional storage for the SNF that DOE would have picked up had it not breached the Standard Contract. These damages will continue to accumulate as long as DOE fails to perform its Standard Contract obligations, since ENIP will need to take further actions in the future to mitigate the effects of DOE's breach. On the other hand, whatever damages ConEd may have incurred have already been incurred and are based solely on past events that largely relate to the alleged diminution in value of Indian Point 2. A comparison of the two plaintiffs' damages claims, as alleged in their complaints, shows that the underlying theories of recovery are vastly different.

### A. ENIP's Damages Are Largely Based On DOE's Continued Nonperformance

In its complaint, ENIP has alleged that as a result of the Government's breach, ENIP "has incurred and will continue to incur other substantial damages, including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternative off-site storage capacity to permit continued operation of its nuclear plant." Complaint ¶ 21. Moreover, the "rate at which ENIP's damages will continue to accrue is dependent upon various factors including but not limited to when DOE commences performance of its contractual obligations . . . ." Id. ¶ 25.

In other words, ENIP will seek in this action damages it incurred from the date it purchased Indian Point 2 from ConEd to a reasonable cut-off date before ENIP's trial. Specifically, as ENIP has previously noted, the costs that ENIP has incurred as a result of the Government's breach thus far include, *inter alia*, the design, license, and construction of a dry fuel storage facility and the purchase of dry fuel storage containers. Plaintiff's Reply In Support Of Its Motion For Summary Judgment On Liability And Response In Opposition To Defendant's Cross-Motion For Summary Judgment On Liability at 11 (Sept. 20, 2004). Noticeably absent

from ENIP's complaint are any allegations regarding the circumstances surrounding its purchase of Indian Point 2 from ConEd, which (as explained below) is the main factual issue underlying the diminution in value damages alleged in ConEd. By contrast, any consideration of ConEd's damages appears to require a determination as to the effect (if any) of DOE's breach on the Indian Point 2 sales transaction. Consideration of such issues is neither necessary nor relevant to the trial of ENIP's damages in this case.

**B. ConEd's Damages Are Based On Past Events**

According to ConEd, its damages claims are based on the alleged "significant diminution in the market value for Indian Point" and "increased costs and expenditures incurred by Con Edison . . . to store and maintain SNF. . . ." ConEd's Complaint (attached hereto as Exhibit A) ¶ 67 (Jan. 13, 2004). These claims appear largely based on the allegations that: (1) the Government's breach of the Standard Contract significantly diminished the value of Indian Point 2 because prospective purchasers of the plant accounted for the increased risks brought about by DOE's nonperformance, id. ¶ 61; (2) ENIP purchased Indian Point 2 from ConEd at a discounted price, having factored in the future costs of constructing and operating a dry cask storage facility at the plant, id. ¶¶ 73-75; and (3) had DOE performed its obligations under the Standard Contract, ConEd would have realized the benefits of a more competitive process for the sale of Indian Point 2, id. ¶ 68. These factual allegations, all of which, if true, would have occurred prior to September 6, 2001, the date ConEd sold Indian Point 2 to ENIP, have no relevance to the scope or extent of the damages that ENIP has alleged and seeks in this case.

**C. ConEd's "Diminution In Value" Claim Has No Bearing On ENIP's Damages**

There is also no merit to the Government's assertion that ENIP's payment of an allegedly "reduced" price to ConEd when it purchased Indian Point 2 somehow constitutes partial "compensation" to ENIP for its breach of contract claim against the Government. Motion to

Consolidate at 7. The suggestion that the Government should recoup from ENIP any damages that are awarded to ConEd for its diminution in value claim, id. at 13-14, is equally flawed.[4]

First, the Government has failed to cite any legal support for the proposition that a company that purchased private property on the open market could somehow be liable to the Government for any diminution in value of that property prior to the purchase, especially if the Government (and not the purchasing party) were responsible for the diminution in value. Second, to the extent that there were "risks" which allegedly reduced the perceived value of Indian Point 2 when ConEd was selling the plant (e.g., "anticipated expense associated with storing SNF on-site indefinitely," ConEd's Complaint at ¶ 68), these risks apply equally to ENIP's ownership of the plant, because the prospect of DOE accepting any SNF from Indian Point 2 in the near future is at least as unlikely today as it was when ConEd sold the plant in 2001. Hence, the fact that ENIP currently operates Indian Point 2 with the same prospective risks that ConEd faced hardly constitutes "compensation" (as the Government uses the term) for the Government's breach of the Standard Contract, regardless of the price that ENIP paid for the plant. Third, whether any one factor made a measurable difference in the price ENIP paid for Indian Point 2 is simply not an issue in ENIP's case against the Government, nor should resolution of that issue affect the measure of ENIP's breach of contract damages.

---

[4] The Court ruled in Boston Edison that "[t]he possibility of an overlapping recovery deserves strong consideration" because a primary objective of consolidation is to prevent separate actions from producing conflicting results. 67 Fed. Cl. at 66. In the Court's view, the relevant consideration is "whether judicial economy would be achieved through consolidating a single issue which otherwise may well be twice litigated in two cases." Id. With respect to the Government's double recovery defense, however, there is no such "single issue" that would be litigated twice and lead to conflicting damages awards here and in ConEd – especially given the temporal and conceptual differences between ENIP's and ConEd's claims described in this brief. Moreover, because the Government has not yet seen the specific costs that ENIP and ConEd seek to recover as damages in their respective cases, any concerns of a double recovery by the plaintiffs are premature at this time and theoretical at best.

As demonstrated above, the damages that ENIP has claimed and the damages that ConEd has claimed are independent of one another and based on distinct timeframes and distinct damages theories. It would be prejudicial to ENIP for ConEd's unrelated claims to serve as an artificial burden on ENIP's proof of damages. ENIP is entitled to recover any and all costs after September 2001 that would not have been incurred but for the Government's breach of the Standard Contract and that can be proved with "reasonable certainty." See Energy Capital Corp. v. United States, 302 F.3d 1314 (Fed. Cir. 2002) (affirming expectancy damages award in complex breach of contract case). Consolidation would also be prejudicial to ENIP since it would unnecessarily increase ENIP's litigation costs by requiring its participation in a trial (i.e., ConEd's) on issues that are irrelevant to its damages.[5]

[5] While it may be necessary for the Government to pursue some overlapping discovery from ENIP and ConEd (e.g., depositions of the same witnesses), such discovery could readily be coordinated without formal consolidation of the cases. For example, in 2001 and 2002, the Government and multiple SNF plaintiffs engaged in coordinated discovery on SNF acceptance schedule issues, which discovery was completed without the consolidation of any cases. ENIP is prepared to participate in coordinated discovery with ConEd, subject to the adoption of a reasonable plan and schedule for such discovery.

## III. The Government's Other Reasons For Consolidation Are Not Unique To ENIP's Case, And This Court Has Repeatedly Declined To Consolidate The SNF Cases On These Grounds

The Government complains that absent consolidation, "there is the potential that the Court could determine different rates of acceptance, even though the same contract is at issue in two cases, leading to inconsistent judgments in the two cases." Motion to Consolidate at 10-11. In its prior consolidation efforts, the Government has also raised concerns about the risk of "inconsistent decisions" by this Court. As explained below, however, the mere possibility that various judges might reach allegedly inconsistent outcomes on the rate of SNF acceptance in the different SNF cases does not justify consolidation for ENIP with ConEd here or with any other cases. Nonetheless, the Government has consistently posited an illusory (and at best, theoretical) fear that disparate rulings from this Court regarding DOE's SNF acceptance obligations would make it difficult to determine an individual utility's damages. The Government has also alleged that the determination of a "consistent and uniform contractual acceptance schedule" is necessary for the adjudication of each utility plaintiff's damages.[6] These concerns are invalid for at least several reasons.

First, the Government has failed to demonstrate why a ruling on the acceptance rate, which would affect ENIP's damages to some extent, is even relevant to the adjudication of ConEd's damages claim, Moreover, at least insofar as the SNF acceptance rate issues are

---

[6] For example, in July 2003, the Government filed a "Second Motion To Renew Its Motion To Consolidate" that sought formal consolidation of all the SNF cases in this Court, which motion was denied by the Chief Judge in January 2004. A copy of the Government's July 2003 motion was filed with the Court in Entergy Nuclear Generation Co. v. United States, No. 03-2626C, as an exhibit to the plaintiff's brief in opposition to the Government's motion to consolidate that case with Boston Edison Co. v. United States, No. 99-447C. ENIP has not attached a scanned copy of the Government's July 2003 motion here, as such attachment would exceed the 2 megabyte size limitation on electronic files under this Court's General Order No. 42A ¶ 4, but ENIP will promptly file another copy of the July 2003 motion if the Court so directs.

concerned, no inconsistent decisions have yet been issued by the various trial judges which have considered the matter. Indeed, in each instance where this Court has ruled on the Government's motion for summary judgment on the acceptance rate, the Government's motion has been denied. See, e.g., Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88, 99-100 (2003); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 668 (2003). Second, the issue of whether or not DOE is contractually required to accept Greater-Than-Class-C ("GTCC") waste or failed fuel, Motion to Consolidate at 10-11, is irrelevant to the question of consolidation since ENIP has not made any allegations in its Complaint regarding DOE acceptance of these materials. Rather, ENIP seeks damages resulting from DOE's failure to proceed with the timely acceptance of SNF. Third, the necessity for this Court to determine a SNF acceptance schedule for ENIP that is consistent with the schedule for ConEd is itself a faulty premise since it is impossible now for DOE to accept SNF from ConEd at Indian Point 2, as ConEd no longer owns the plant. Lastly, as the Federal Circuit has previously stated in the SNF litigation:

> [e]quitable adjustment of the contractual schedules for removal of the nuclear waste would provide virtually no basis for compensating [plaintiff] for any damages it may have sustained from the Department's failure to perform its contractual obligations. At present there are no schedules containing specific dates for disposing of the waste of particular companies. It is uncertain when they will be adopted and to what extent, if any, they will, or could effectively reflect the Department's breach of the contract.

Maine Yankee Atomic Power Co. v. United States, 224 F.3d 1336, 1342 (Fed. Cir. 2000). Indeed, the calculation of damages in the SNF cases does not require a "uniform contractual acceptance schedule" as the Government has suggested, but merely proof of a plaintiff's damages associated with DOE's breach that is held to the same "reasonable certainty" standard as the Federal Circuit routinely follows in other breach of contract cases. See, e.g., Energy Capital Corp., 302 F.3d at 1325.

Specifically, a SNF plaintiff's damages are generally measured by considering, *inter alia*: (1) the costs the plaintiff has incurred and will incur to store spent fuel in view of the Government's partial breach; and (2) the costs the plaintiff would have incurred if DOE had fulfilled its obligations under the Standard Contract. Here, ENIP's damages claim will likely follow this same approach. This process essentially entails a calculation of expectancy damages "sufficient to place the injured party in as good a position as it would have been had the breaching party fully performed." Indiana Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citation omitted). To this end, ENIP only needs to show that enough of its SNF would have been removed so that it would have avoided additional SNF storage costs, had DOE performed its Standard Contract obligations. These factual issues, when resolved, are sufficient for the Court to render a judgment on damages. While determination of an appropriate acceptance rate may impact a given utility's damages claim, the same could be said of a host of other factors (e.g., the date DOE begins SNF acceptance at a repository). Hence, consolidation is especially inappropriate here because, as stated above, ENIP's demonstration of damages will certainly vary from ConEd's. Even here, where the claims involve the same plant, an assessment of damages resulting from additional SNF storage will be different for ENIP and ConEd since the extent to which dry storage is necessary at Indian Point 2 has changed over the years in light of DOE's continuing nonperformance.

## IV. The Use Of RCFC 14 Summons and Notice Is Inappropriate Here Since The Government Has No "Contingent Claim" Against ENIP

In its previous attempts to consolidate the SNF cases, the Government requested that this Court issue a notice pursuant to 41 U.S.C. § 114(b) ("Section 114") to those Standard Contract holders who had not yet chosen to sue the Government. This issue has been briefed several

times by other utility plaintiffs in their briefs against consolidation, and ENIP's grounds for opposing the Government's alternative motion are similar here.

The Government maintains that a RCFC 14(a) summons, pursuant to Section 114, is necessary to answer the "contingent claim of the United States for the recovery from ENIP of any monies that may be paid by the United States to ConEd with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States." Motion to Consolidate at 13. As explained in Section II.C *supra*, however, ConEd's damages claim has no bearing on ENIP and the Government has no "contingent claim" against ENIP. A summons issued under RCFC 14(a) is only appropriate "in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party." Southern Cal. Edison Co. v. United States, 226 F.3d 1349, 1355 (Fed. Cir. 2000). Section 114(b) provides the procedural tools to bring in all "erroneously paid" parties, to assure that the Government may litigate its contingent claims against an erroneously over-paid party in the same proceeding initiated by an erroneously under-paid party. Id.

The use of RCFC 14(a) summons here for ENIP and ConEd is flawed because the Government has mischaracterized any potential damages in ConEd as an erroneous payment of money already made to ENIP, based on a straightforward purchase of property between two private entities that did not directly involve the Government. The Government has failed to specify any legal grounds on which a contingent claim may be brought that would meet the requirements of Section 114. Thus far, the Government has only made unsupported assertions about how any damages that ConEd may recover in its suit must somehow be connected to ENIP, based on the mere fact that ConEd sold Indian Point 2 to ENIP at an allegedly reduced price. Just as importantly, unlike the court in Southern California Edison, this Court will not be apportioning damages among Standard Contract holders based on a set fund. SNF plaintiffs will

recover any damage awards out of the Judgment Fund and, thus, the Government's damages payment to one plaintiff is completely independent of and not contingent on another's. See Ala. Power Co. v. Dep't of Energy, 307 F.3d 1300, 1315 (11th Cir. 2002).

Moreover, even if ENIP were noticed as a third-party defendant in ConEd pursuant to RCFC 14(a)(1), it would not be bound by any adverse judgment since ENIP could not actually appeal such a judgment. See Penda Corp. v. United States, 44 F.3d 967, 971-73 (Fed. Cir. 1994). In Penda, the Federal Circuit denied standing to a RCFC 14(a)(1) third-party defendant that challenged the judgment that applied to the plaintiff and the Government, neither of which pursued an appeal. Penda, 44 F.3d at 972. The RCFC 14(a)(1) third-party defendant sought to appeal, because it feared that it would owe indemnification to the Government, or could potentially face a related suit brought by plaintiff in another court. Id. The Federal Circuit denied standing to appeal because the Court of Federal Claims' judgment involved an obligation between the Government and the plaintiff; it involved no obligation or claim by the third-party defendant. Id. The Federal Circuit concluded that "[i]t is axiomatic that a judgment is without preclusive effect against a party which lacks a right to appeal that judgment." Id. at 973. Here, a similar problem could arise. If ENIP were noticed as a third-party defendant in ConEd, under Penda no final judgment could be entered against ENIP since ENIP would not have standing to appeal any judgment against it.

Furthermore, the underlying rationale for using the notice procedures of RCFC 14(a)(1) is the "prevention of numerous proceedings and determinations on an identical set of facts" and the "furtherance of the conservation of judicial time and effort." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). However, if a noticed party such as ENIP will not be bound by the results of a consolidated proceeding, then the process will simply not conserve any judicial time or resources as the Government suggests. And since, in any event, the ENIP and

ConEd cases do not turn on "determinations on an identical set of facts," the purposes behind RCFC 14(a)(1) notice procedures simply do not apply here. The Government's procedural maneuverings will only lead to additional expense and a waste of judicial resources.

## CONCLUSION

For the reasons stated above, the Government has failed to meet the requirements of RCFC 42 and the Motion to Consolidate should be denied. The Government's alternative motion for issuance of a summons to ENIP in ConEd and to ConEd in this case pursuant to RCFC 14(a) and for notice to ENIP and ConEd pursuant to RCFC 14(b) should also be denied.

Dated: October 21, 2005

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Entergy Nuclear Indian Point 2, LLC

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)